**NATIONAL WAR LABOR BOARD et al. v.**
**MONTGOMERY WARD & CO., Inc.**

No. 8732.

United States Court of Appeals
District of Columbia.

Argued June 29, 1944.
Decided July 19, 1944.
Writ of Certiorari Denied Nov. 13, 1944.

See 65 S.Ct. 134.

Mr. Francis M. Shea, Assistant Attorney General, with whom Messrs. Joseph A. Fanelli, Special Assistant to the Attorney General, Robert Burstein, Attorney, of the Department of Justice, and Edward M. Curran, United States Attorney, all of Washington, D. C., were on the brief, for appellants.

Mr. Stuart S. Ball, of Chicago, Ill., Member of the Bar of the Supreme Court of Illinois, pro hac vice, by special leave of court, with whom Mr. Henry F. Butler, of Washington, D. C., was on the brief, for appellee.

Before MILLER, EDGERTON, and ARNOLD, Associate Justices.

EDGERTON, Associate Justice.

This is a suit by Montgomery Ward & Company to annul and enjoin a "directive" order of the National War Labor Board

with which the plaintiff has not complied. The defendants are the Board, its members and alternate members, and the Director of Economic Stabilization. This special appeal is from an order of the District Court which denied the defendants' motion to dismiss the complaint for lack of jurisdiction and for failure to state a claim on which relief could be granted, and which also denied their alternative motion for summary judgment.

The complaint, filed October 5, 1943, states that on August 20 the Board issued a certain directive order which deals with labor relations in the plaintiff's four retail stores in Detroit, one in Denver, and one in Jamaica, New York. It asserts that this order is illegal for various reasons and that compliance with it would be costly. It asserts that: "The defendants, and each of them, threaten to enforce said order, or cause it to be enforced * * * The Board has reported, or is about to report and unless restrained by this Court, will report, [plaintiff's] noncompliance· to the Economic Stabilization Director. The Economic Stabilization Director, under the terms of Executive Order No. 9370, is required to, is about to, and will, unless restrained by this Court, issue one or more of the directives specified in paragraphs (a) and (c) of said Executive Order, directed against the company * * * The exact nature of the directives which the Economic Stabilization Director proposes to and will, if not restrained by this Court, issue under Executive Order No. 9370 is not known to the company. Any such directive, whether of the nature described below or otherwise, would interfere with and destroy the operation of the company's stores, would destroy the business of said stores and would result in irreparable injury." The complaint then suggests various types of directives and asserts that, if the Director issued any of them, they would irreparably injure the plaintiff by restricting access to supplies, transportation, or services.[1] It asks the court to declare that the Board's order is and any steps for its enforcement would be illegal; to enjoin the Board from reporting plaintiff's noncompliance to the Director or to the President; and to enjoin the Director from issuing any directive or taking any other action to enforce the order.

Executive Order 9370[2] provides that "in order to effectuate compliance with directive orders of the National War Labor Board in cases in which the Board reports to the Director of Economic Stabilization that its orders have not been complied with, the Director is authorized and directed, in furtherance of the effective prosecution of the war, to issue such directives as he may deem necessary: (a) To other departments or agencies of the Government directing the taking of appropriate action relating to withholding or withdrawing from a non-complying employer any priorities, benefits or privileges extended, or contracts entered into, by executive action of the Government, until the National War Labor Board has reported that compliance has been effectuated * * * (c) To the War Manpower Commission, in the case of non-complying individuals, directing the entry of appropriate orders relating to the modification or cancellation of draft deferments or employment privileges, or both."

On January 21, 1944, the defendants filed two affidavits. That of Fred M. Vinson, Director of Economic Stabilization, states: "The matter of plaintiff's noncompliance with the directive order of the

---

[1] E. g., "The company requires in the course of its business large quantities of supplies of which the supply is limited, and as to which the amounts available to the company are determined by executive action. A directive to appropriate executive departments by the Economic Stabilization Director, as contemplated by paragraph (a) of Executive Order No. 9370, ordering further restrictions upon the quantities of such supplies available to the company, would result in irreparable injury to the company."

A supplemental complaint, filed June 15, 1944, alleges that "the defendants now threaten, and will cause, unless prevented by this Court, the forcible seizure of plaintiff's property * * *." But none of the defendants has power to cause seizure of plaintiff's property. The President's power to take and use property in furtherance of the war effort does not depend upon any action of the defendants. In respect to any possible seizure of property, any action of the defendants would be "'at most, advisory.' * * * The correctness of administrative advice cannot be reviewed by the courts." Employers Group of Motor Freight Carriers v. National War Labor Board, —— U.S.App.D.C. ——, 143 F.2d 145.

[2] 8 Fed.Reg. 11463.

National War Labor Board challenged in the above-captioned proceeding has not been reported to me. I have neither threatened to take action nor taken action to effectuate compliance with such directive order of the National War Labor Board. I am not presently advised as to what action, if any, I would take pursuant to my discretion under Executive Order 9370 should the matter ever be reported to me." The affidavit of Lloyd K. Garrison states: "I was formerly General Counsel and Executive Director and I am now Alternate Public Member of the National War Labor Board. In my official capacity I am familiar with all of the facts concerning and preceding the above-captioned suit. The National War Labor Board has neither threatened to take action nor taken action to enforce its directive order challenged in this suit. It has no power to enforce such directive order. It has not referred the matter of the plaintiff's noncompliance with such directive order either to the President or to the Director of Economic Stabilization." There are no contradictory affidavits.[3]

■ In our opinion the court should have dismissed the complaint upon the defendants' motion. As we found in the Employers Group case, no statute makes orders of the National War Labor Board enforceable or reviewable.[4] It is true that the Board order there involved was issued before and the one here involved after the War Labor Disputes Act[5] and Executive Order 9370. But as we pointed out in that case, the War Labor Disputes Act does not make the Board's orders enforceable[6] or reviewable. The question therefore is whether, in view of Executive Order 9370, the complaint states a case within the court's general equitable jurisdiction to review and restrain administrative action.

■■ Judicial interference with administration is sometimes necessary but always serious. Interference with a vital war agency is particularly serious. A plaintiff cannot confer jurisdiction to review even commonplace administrative action by a mere forecast that he will be irreparably injured if the court does not intervene. He must allege facts which support his forecast.[7] The plaintiff has not done so. Allegations that the Board is about to report plaintiff's noncompliance and that the Director is about to issue directives are not statements of fact at all but mere predictions. Little more can be said of the

[3] In the District Court the plaintiff filed only an affidavit that in January, 1944, in the course of testimony concerning plaintiff before a Special Committee of the House of Representatives, Lloyd K. Garrison said: "The [Montgomery Ward] company has a lawsuit pending here in the District of Columbia, and so has the Gypsum Company, and we have been hesitant, while those lawsuits are pending, to attempt to refer the cases to the President, or anything of that sort."

For whatever light might be thrown upon the meaning of the complaint, we granted the plaintiff permission to file additional affidavits in this court. The plaintiff filed excerpts from testimony given in May, 1944, by the Chairman of the Board and by the Attorney General, before a Select Committee of the House of Representatives, regarding the authority of the President to deal with violations of Board orders. This testimony contains no threat to take action in, and makes no reference to, the present controversy.

[4] Employers Group of Motor Freight Carriers, Inc., v. National War Labor Board, —— U.S.App.D.C. ——, 143 F.2d 145.

[5] Act of June 25, 1943, 57 Stat. 163, 50 U.S.C.A. Appendix, §§ 1501–1511.

[6] Cases under the Railway Labor Act of 1926, 44 Stat. 577, 45 U.S.C.A. §§ 151–163, do not support the plaintiff's contrary contention. Both the legislative history of that Act and a number of expressions in the Act itself which are absent in the War Labor Disputes Act show an intent on the part of Congress to create legal rights. Texas & New Orleans Railroad Co. v. Brotherhood of Railway & Steamship Clerks, 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034; Virginian Railway Co. v. System Federation No. 40, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789.

[7] Spielman Motor Sales Co., Inc., v. Dodge, 295 U.S. 89, 55 S.Ct. 678, 79 L.Ed. 1322; State of California v. Latimer, 305 U.S. 255, 59 S.Ct. 166, 83 L.Ed. 159; Watson, Attorney General of Florida, v. Buck, 313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416; Milliken v. Stone, 2 Cir., 16 F.2d 981, certiorari denied 274 U.S. 748, 47 S.Ct. 764, 71 L.Ed. 1331; Electric Bond & Share Co. v. Securities & Exchange Comm., 2 Cir., 92 F.2d 580, affirmed 303 U.S. 419, 58 S.Ct. 678, 82 L.Ed. 936, 115 A.L.R. 105.

indiscriminate allegation that all the defendants threaten to enforce the Board's order. There are 22 defendants. The complaint does not state the form, substance, time, place, or circumstances of any threat. We must not ignore the probability that if the complaint meant to allege threats it would say what form they took and when and to whom they were made. We understand the complaint to mean not that all 22 of the defendants, or any of them, have made threats, but that the plaintiff considers the situation threatening. This understanding is confirmed by the fact that the affidavits[8] which the plaintiff filed disclose no threats, quote no more than two of the defendants, and quote the Attorney General although he is not a defendant. It is also confirmed by a number of expressions in the plaintiff's brief.[9] The brief states: "The order itself is a continuing threat * * * A specific threat to inflict injury is not necessary if it appears from all the evidence that the injury is impending * * *" Even if the complaint were interpreted as alleging that threats have been made, the allegation would come only to this, that the defendants have used unspecified and perhaps vague or tentative expressions which, in the plaintiff's opinion, indicate a sufficient inclination toward taking some step or other for the enforcement of the Board's order so that they may be characterized as threatening. The complaint therefore alleges no facts which indicate more than a possibility of any action by the defendants which might cause injury to the plaintiff. It follows that the complaint states no valid claim for review of the Board's order.

■ Since Executive Order 9370 neither requires nor authorizes the Director to issue any directives except such as he may deem necessary, the statement in the complaint that the Director is required to take action against the plaintiff is an erroneous statement of law.

■ Even if the complaint had stated a sufficient claim the uncontradicted affidavits of the defendants would have shown that there was no genuine issue as to any material fact, and their motion for summary judgment should therefore have been granted. In our opinion the affidavits were pertinent, also, to the motion to dismiss.[10]

Reversed.

---

[8] Note 3, supra.

[9] In summarizing the complaint, the brief recites the allegation that the defendants "threaten" enforcement and then proceeds "More specifically, the complaint alleged (par. 50) that the Board 'has reported, or is about to report, and, unless restrained by this Court, will report' Appellee's non-compliance to Appellant Vinson." Thus the brief, by way of making the meaning of "threaten" more specific, predicts that action will occur.

[10] "It is not important whether the objection is called a motion to dismiss or one for summary judgment. Since the same relief is sought, the difference in name is unimportant. In any event, the affidavits presented are available on either motion. Federal Rules 6(d), 12(b), 43(e), 56(e), 28 U.S.C.A. following section 723c." Central Mexico Light & Power Co. v. Munch, 2 Cir., 116 F.2d 85, 87. Gallup v. Caldwell, 3 Cir., 120 F.2d 90; Victory v. Manning, 3 Cir., 128 F.2d 415.