### ENGLAND et al. v. DEVINE et al.
**Civil Action No. 3352.**

District Court, D. Massachusetts.
March 5, 1945.

Sidney S. Grant, and Harold Roitman, Grant & Angoff, all of Boston, Mass., and Isadore Katz, of New York City, for plaintiffs.

Francis M. Shea, Asst. Atty. Gen., Alfred S. Berg, of Washington, D. C., Irving R. Brand, of Minneapolis, Minn., and Edmund J. Brandon, U. S. Atty., and George F. Garrity, Asst. U. S. Atty., both of Boston, Mass., for defendant Paul N. Devine, individually and as Area Director for New Bedford area of War Manpower Commission of U. S. A.

Charles B. Rugg, of Boston, Mass., for defendants New Bedford Cotton Manufacturers Ass'n, Gosnold Mills, Kilburn

Mills, Nawshon Mills, Wamsutta Mills, Nashawena Mills, Hathaway Mfg. Co., Nonquitt Mills, Saule Mill, and Pierce Bros., Ltd.

WYZANSKI, District Judge.

The original complaint in this case was filed February 20, 1945. By consent it was amended March 5, 1945. As amended the complaint names as plaintiffs the Textile Workers Union of America, C.I.O., a voluntary unincorporated trade union, the New Bedford Joint Board of the Textile Workers Union of America, locals 588–591 and 593–597, affiliated with that union, and Antonio England, an officer of that union, and five employees of textile mills. It names as defendants Paul N. Devine, individually and as Area Director in the New Bedford area for the War Manpower Commission, Gosnold Mills, Kilburn Mills, Nawshon Mills, Wamsutta Mills, Nashawena Mills, Hathaway Mfg. Co., Nonquitt Mills, Soule Mill and Pierce Brothers Ltd., each of which is a corporation operating a textile mill; and New Bedford Cotton Manufacturers' Association.

According to the amended complaint and the material thereto annexed, the National Labor Relations Board on April 14, 1943, designated the union and locals 588–597 to represent the production and maintenance employees of the nine mills named and Quissett Mill. June 19, 1943, the union, the ten locals and the ten mills executed a collective bargaining contract for a term ending no earlier than August 1, 1945. The contract made the union the exclusive bargaining representative for the production and maintenance employees of the ten mills; provided for a union shop; stipulated in Article XI that the mills would not "lock out any employee or group of employees"; and provided in Article XII that "no discharge shall be made without just cause."

The pleading referred to the First and Second War Powers Acts, 55 Stat. 838, 56 Stat. 176; 50 U.S.C.A. Appendix, §§ 601 et seq., 631 et seq., Executive Orders, Nos. 9139 and 9279 Dec. 5, 1942, 50 U.S.C.A. Appendix, § 310 note, 7 F.R. 2919 and 10177, a directive of the Director of War Mobilization dated August 4, 1944, and other governmental orders which established the War Manpower Commission, designated the City of New Bedford as a group 1 labor area, and provided for employment ceilings. It recited that purporting to act under these orders, the Commission through its Area Director Devine in January 1945 notified the union and the textile mills that certain tire cord plants located in New Bedford being the Fisk Division of the United States Rubber Company and the Firestone Textiles Plant, needed additional workers from certain skilled categories and that accordingly the employment ceilings of the nine defendant textile mills would be curtailed to provide eighty-one workers for a start for said tire cord plants. An attempt to secure these workers by voluntary action did not produce prompt results. February 16, 1945, Devine notified each defendant mill that its employment ceiling in certain occupations had been reduced and informed the mill to select workers having the listed skills to be ready for an interview with a representative of the United States Employment Service on February 21, 1945, in order that the workers' suitability for referral to local priority jobs be determined.

It is agreed that subsequently ten mills selected ninety workers. Some of them declined to report to the United States Employment Service for an interview. Instead they filed on February 24, 1945, an appeal to Paul V. McNutt of Washington, D.C., the Chairman of the War Manpower Commission. He appointed a committee of five to hear testimony and report to him. The Committee took testimony but has not made a final report on all the cases. The five employees named as plaintiffs in the bill are among the ninety selectees.

The complaint asked for a temporary restraining order as well as a preliminary injunction and a permanent injunction.

February 20, 1945, in accordance with the usual practice, counsel for plaintiffs presented to me in chambers at once upon the filing of the bill, without the presence of other counsel and without oral testimony, the request for the temporary restraining order. I forthwith denied the request because of doubts as to whether the necessary parties had been named, as to whether the court had jurisdiction of the case, and as to whether there was equity jurisdiction. Instead, I set the case down for hearing on March 5 on the prayer for a preliminary injunction. That prayer, like the prayer for a permanent injunction, seeks to have this court enjoin the Area Director from causing the nine textile mills to discharge, and the mills from discharging, employees in pursuance

of a plan of inducing them to work for the tire cord plants.

■ After I had assigned the case for hearing, a representative of the Commission asked me informally whether this assignment made it unlawful for Devine and the mills to discharge men pending the hearing. I informed him that there was no outstanding order of this court of which he or any mill could be adjudged in contempt. But I did not give to any person any assurance that this case could be made moot or non-justiciable by discharging employees after the bill was filed and prior to a hearing. Such an assurance would have been contrary to the familiar rule that after a defendant has been notified of the pendency of a suit seeking an injunction against him he acts at his peril and subject to the power of the court to restore the status quo. Jones v. Securities Exchange Commission, 298 U.S. 1, 15–18, 56 S.Ct. 654, 80 L.Ed. 1015.

February 28, 1945, defendant Devine filed a motion to dismiss the complaint on the grounds that (1) the suit cannot be maintained in the absence of Chairman McNutt of the War Manpower Commission; (2) this Court lacks jurisdiction over the subject matter of the complaint; (3) this is a suit on behalf of individual employees and it is not shown that each employee's interest exceeds $3,000; (4) this is a suit against the United States; (5) the complaint fails to state a cause of action; and (6) the plaintiffs have not exhausted their administrative remedies.

I am of opinion that the motion to dismiss must be granted, although I do not find it necessary to discuss all the grounds assigned.

■ First: At the outset it is important to notice the precise legal theory upon which this case is presented. In essence this is a suit to set aside the February 16, 1945, directive from Devine to the textile mills. That directive instructed the textile mills to select the names of employees with certain skills, to discharge those selectees, and to give the United States Employment Service the names of the selectees for interview and referral to jobs with a higher priority. The directive is alleged to be invalid because (1) the Executive branch of the government has no authority to issue such a directive in the absence of an act of Congress, and (2) the directive is a denial of due process of law guaranteed by the Fifth Amendment. Plaintiffs in open court abandoned their claim that the directive violates the Thirteenth Amendment by subjecting employees to involuntary servitude.

This is not a suit based on an alleged breach of contract or an alleged inducement to break a contract. If this were an action ex contractu in which the union on behalf of itself or its employees alleged that an employer had broken the collective contract or the individual contracts of employment, this federal court would not have jurisdiction because, among other reasons, it is not alleged that the parties are citizens of different states. The absence of diversity citizenship would preclude this federal court from determining such an action, even though the employer should offer as his answer to the charge of breach of contract a defense that the breach was caused by act of the federal government. Likewise, if this were an action ex delictu in which the union on behalf of itself or its employees alleged that Area Director Devine had induced an employer to break his collective contract or the individual contracts of employment, this federal court would not have jurisdiction because, among other reasons, it is not alleged that the parties are citizens of different states. This defect would not be cured even though the Area Director should offer as his answer that he acted pursuant to his duties as an officer of the United States.

■ Second: To succeed in securing a review by this court of Devine's directive of February 16, 1945 plaintiffs must show: (1) That they have a standing to question it; (2) that this court has the statutory authority to hear the controversy; (3) that it is conformable to settled principles of equity jurisdiction for this court to hear the case; and (4) that plaintiffs have served with process the person or persons legally responsible for the directive. Until those four procedural essentials are met, this court cannot deal with the merits of the controversy. For present purposes it will be sufficient to consider the second of these necessary elements.

Admittedly there is no statute which gives to this court specific authority to review a directive of the War Manpower Commission or of any Area Director. But plaintiffs assert that since this court has under Jud.Code § 24(1), 28 U.S.C.A. § 41 (1), a general authority to hear cases where the matter in controversy exceeds,

exclusive of interest and costs, the sum or value of $3000 and arises under the Constitution or laws of the United States, the court has statutory jurisdiction to hear this case.

The argument of plaintiffs has three steps. Plaintiffs' major premises are that Article One of the Constitution vests all legislative power in Congress and that the Fifth Amendment to the Constitution guarantees that "no person shall be * * * deprived of life, liberty, or property, without due process of law". The minor premises are that defendant Devine's letter of February 16, 1945, is an exercise of legislative power, and, moreover, violates the guarantees of due process inasmuch as, in plaintiffs' view, it deprives the union members of their property rights in their jobs in the textile mills and deprives the union of its property right in its collective bargain. From these premises plaintiffs conclude that their case arises under the Constitution.

██ It is unnecessary to scrutinize all the implications of this syllogism, since the minor premises are untenable. The directive of the War Manpower Commission is not, in the legal sense, an order which deprives anyone of any property. Essentially it is an official recommendation, not an enforceable command. It represents the informed judgment of officials whom the President has charged with responsibility in time of war. It is addressed to the patriotism and the good will of employers and employees. But it carries no penal sanctions. If the owner of a textile mill chose to disregard the directive, neither the War Manpower Commission nor the courts could fine or imprison him. Likewise, if a discharged worker refused to report to the United States Employment Service for referral to a job of high priority, neither the War Manpower Commission nor the courts could fine or imprison him. To be sure, if an owner of a textile mill disregarded the directive, some executive agency might seize the mill, curtail its supplies or alter its priorities; and if a worker disregarded the directive some executive agency might induce other employers not to hire him or might induct him into the armed services. These, however, are speculative, collateral consequences of the directive. The directive itself creates no civil rights. It is, therefore, not an order impinging upon a constitutional right, and a complaint that the order is invalid

does not create a case arising under the Constitution so as to be within the jurisdiction of this court.

My conclusion that a suit to set aside a directive of the War Manpower Commission is not within the jurisdiction of a federal court is precisely analogous to the conclusion reached by the Court of Appeals of the District of Columbia in National War Labor Board v. Montgomery Ward & Co., Inc., App.D.C., 144 F.2d 528, in which the Supreme Court of the United States denied certiorari on November 13, 1944. It was held in that case that a directive of the War Labor Board is not in legal effect an order reviewable in a federal court, despite the possibility that if the directive is not obeyed, the executive branch of the government may seize the recalcitrant's property or take other drastic action. Compare Employers Group, etc., v. N.W.L.B., App.D.C., 143 F.2d 145, Switchmen's Union, etc., v. National Mediation Board, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61. In every important particular the challenge of the union directed to the War Manpower Commission in the present case is indistinguishable from the challenge of the company directed to the War Labor Board in the first Montgomery Ward case.

To guard against misunderstanding, let me add that the first Montgomery Ward case just cited is not to be confused with the second Montgomery Ward case decided January 27, 1945 by Judge Sullivan of the Northern District of Illinois, reported in D.C., 58 F.Supp. 408. In that second case, the President had already seized the company's plant, and the issue presented to Judge Sullivan was not whether the War Labor Board had power to issue a directive, but whether the President had power to seize the plant. Here the President has not made any seizure. Indeed no executive agency has in any way directly acted upon plaintiffs' life, liberty or property. It is true that the textile mills have already acted with reference to the jobs of union members and with reference to the collective contract of the union. But a complaint against such action is a complaint against a private party for breach of contract. Such a complaint does not arise under the Constitution of the United States even if it is anticipated that the private party will defend and justify its action on the ground that the action was taken pursuant to a directive of a governmental agency, and even if it is anticipated that

the plaintiff will reply that the directive is unconstitutional. For purposes of federal jurisdiction it is settled that a case does not arise under the Constitution where the constitutional question is raised by the defendants' answer rather than by the plaintiffs' complaint. Gully v. First National Bank, 299 U.S. 109, 114, 57 S.Ct. 96, 81 L.Ed. 70.

Motion granted; complaint dismissed with costs on the ground that the Court has no jurisdiction.