**MAY DEPARTMENT STORES CO. v. BROWN et al.**

Civ. A. No. 3232.

District Court, W. D. Missouri, W. D.

June 5, 1945.

Lewis, Rice, Tucker, Allen & Chubb and Robert T. Burch, all of St. Louis, John G. Madden and Ralph M. Russell, both of Kansas City, Mo., for plaintiff.

Francis M. Shea, Asst. Atty. Gen., Maurice M. Milligan, U. S. Atty., and Thomas A. Costolow, Asst. U. S. Atty., both of Kansas City, Mo., Arnold Levy, Sp. Asst. to the Atty. Gen., and Harry I. Rand, Atty., Department of Justice, of Washington, D.C., for defendants.

RIDGE, District Judge.

Plaintiff, a New York corporation, operating a department store in St. Louis, Missouri, seeks to enjoin defendants, who are the Chairman, two Vice-Chairmen, and the Director of the Disputes Division of Regional War Labor Board VII, and the three members of a tripartite panel established and appointed by said Board, from taking any further action in a certain labor dispute matter now pending before said Regional Board.

On May 8, 1945 a temporary restraining order was issued ex parte upon the verified complaint of plaintiff, returnable on May 10, 1945 at 9:30 o'clock a. m. On the return date, defendants requested the hearing be continued until May 24, 1945. In the meantime, defendants filed a motion to dismiss the complaint or in the alternative for summary judgment, on seven separate grounds. Said motion is now before the Court for disposition. The first ground contained in the motion to dismiss challenges the jurisdiction of the Court over the subject matter of this action. If this contention be sound, it will not be necessary to consider the other grounds contained in said motion.

The complaint and affidavit, filed in support of the motion to dismiss, discloses the following state of facts: a labor dispute exists between plaintiff and Local No. 372, United Retail, Wholesale and Department Store Employees of America (CIO), hereinafter called the Union, concerning certain busheling-room employees of plaintiff. The dispute was first referred to the National War Labor Board on September 10, 1943, pursuant to Executive Order 9017,[1] and Section 7(a) (1) of the War Labor Disputes Act,[2] by the Acting Director of the United States Conciliation Service, and the Acting Secretary of Labor, for refusal of plaintiff to recognize or to bargain collectively with the Union, in respect to said busheling-room employees, and for the reason that said dispute (in the words of the certification), "might interrupt work which contributes to the effective prosecution of the war and may lead to substantial interference with the war effort and which cannot be settled by collective bargaining or conciliation." Thereafter the National War Labor Board referred said dispute to Regional War Labor Board VII, and the hearing thereof was set, by said Regional Board, before a tripartite panel. This hearing was later cancelled to await clarification of National War Labor Board policy affecting disposition of dispute cases involving issues of union representation and collective bargaining. In July 1944, the dispute remaining unsettled, the Conciliation Service re-entered the controversy and having failed to resolve said dispute the matter was again, on August 31, 1944, certified to the National War Labor Board. The issue then involved was stated to be "the terms and conditions of employment" affecting the busheling-room employees of plaintiff. This dispute was also referred to Regional War Labor Board VII, and a hearing thereon was held before a tripartite panel on October 16, 1944, at which plaintiff and the Union participated. On November 25, 1944, the panel filed its report with the Regional Board. Thereafter, on January 19, 1945, the Regional Board substantially, in accordance with the panel's recommendation, issued an interim di-

---

[1] 50 U.S.C.A.Appendix, § 1507 note, 7 Fed.Reg. 237.

[2] C. 144, 57 Stat. 163, 166, 50 U.S.C.A. Appendix, § 1507(a) (1).

rective order recommending that the parties endeavor, immediately, to settle by negotiation all outstanding issues regarding the "terms and conditions of employment," and providing that failing such an agreement by February 1, 1945, a public hearing be held in St. Louis, before a tripartite panel of the Regional Board. The plaintiff filed a petition for review of this Regional Board Interim Order.

On July 12, 1943 (prior to the first submission to the National War Labor Board), in a representative proceeding under Section 9(c) of the National Labor Relations Act,[3] the National Labor Relations Board certified the Union in question as the exclusive bargaining representative of plaintiff's busheling-room employees. On December 17, 1943, the National Labor Relations Board issued a decision and order,[4] finding that plaintiff had refused to bargain with said Union and, pursuant to the provisions of the National Labor Relations Act, petitioned the Eighth Circuit Court of Appeals to enforce its order. On January 11, 1945, the Eighth Circuit Court of Appeals entered its decree, enforcing the National Labor Relations Board's order with a slight modification.[5] On January 23, 1945, compliance with said decree was stayed by the Eighth Circuit Court of Appeals until the final disposition of certiorari proceedings to be instituted in the Supreme Court of the United States. On April 9, 1945, the Supreme Court of the United States granted certiorari in said National Labor Relations Board case.[6] Because of the stay order issued by the Eighth Circuit Court of Appeals, and the certiorari proceedings pending in the Supreme Court of the United States, plaintiff petitioned Regional War Labor Board VII, to take no further action in the Labor Dispute matter then pending before it, until the final adjudication of the issues of representation involved in the National Labor Relations Board proceedings by the Supreme Court. On March 31, 1945 the Regional Board vacated its Interim Directive Order of January 19, 1945. On April 17, 1945 the Regional Board denied the

plaintiff's request that all action in said labor dispute case be stayed, pending decision by the Supreme Court and on April 25, 1945, the Regional Board advised the parties that "a further hearing involving terms and conditions of employment in the subject case" would be held in St. Louis, Missouri, on May 10, 1945. It was the holding of this hearing that was restrained by order of this Court on May 8, 1945.

The specific challenge made to the Court's jurisdiction over the subject-matter of this action is: that the complaint states no justiciable controversy; that the Court has no jurisdiction to inquire into or review War Labor Board action; that defendants have no power to act in impairment of any of plaintiff's legal interests, hence plaintiff has no controversy with defendants; that neither statutory enactment nor general equitable principles authorize judicial intervention in National War Labor Board's actions. I am of the opinion that this contention must be sustained and the complaint must be dismissed.

The Court of Appeals for the District of Columbia, in three recent cases[7] has decided, that no statute authorizes review of National War Labor Board directive orders, and that the directives issued by said Board are "not reviewable" by the Courts under general equitable principles. The opinions in said cases make it clear that directive orders issued by the National War Labor Board are unenforceable; that "no money, property or opportunity" is taken or withheld by a directive of the National War Labor Board and that any action taken by said Board in a labor dispute matter is "at most advisory" and "informative." Hence, the correctness thereof cannot be controlled by the Courts. In Oil Workers, Intern. Union, etc., v. Texoma Natural Gas Co., 146 F.2d 62, 65, the Fifth Circuit Court of Appeals held that "the National War Labor Board is not, under the law, vested with judicial functions, nor does it have the power to enforce its determinations, called 'directives,' upon the parties to a controversy before it. It is not a substitute for the courts, and the penden-

[3] 29 U.S.C.A. § 159(c).

[4] 53 N.L.R.B. 1366.

[5] N. L. R. B. v. May Department Stores Co., 8 Cir., 146 F.2d 66.

[6] 65 S.Ct. 1014.

[7] Employers Group of Motor Freight Carriers, Inc. v. National War Labor Board, 79 U.S.App.D.C. 105, 143 F.2d

145, certiorari denied 65 S.Ct. 72; National War Labor Board v. Montgomery Ward & Co., Inc., 79 U.S.App.D.C. 200, 144 F.2d 528, certiorari denied 65 S.Ct. 134; National War Labor Board v. United States Gypsum Company, 79 U.S.App. D.C. 239, 145 F.2d 97.

738

cy of a controversy before it is not a bar to a suit in the courts."

 The power usually delegated to administrative agencies is of three (3) general patterns: (1) quasi judicial power, to determine controversies; (2) legislative power, such as rate and rule making; or (3) the power to act merely in an advisory capacity to the Legislative or Executive branch of the Government. It is generally understood that as to agencies coming within the first two classifications, there is an underlying power in the Courts to scrutinize the acts of such agencies on questions of law and questions of jurisdiction, even though no right of review is given by statute.' As to administrative tribunals falling within the third classification, it is settled law that the Courts have no inherent power to interfere with, or review, the acts of such an agency and unless the right of review is specially given by statute Courts are without jurisdiction to control the action taken by said agency.[8] The National War Labor Board is an administrative tribunal within this last classification. The correctiveness of the advice that might be given by the National War Labor Board, through its derivatives, to the Congress or the Executive branch of the Government, cannot be controlled by the Courts.[9] The final "directives" of the National War Labor Board, being immune to interference or control by the judiciary, then it logically follows that the Courts have no jurisdiction to enjoin the interim proceedings of said Board that will only lead up to "a directive." To hold otherwise would permit to be done by indirection that which cannot be done directly.

Plaintiff attempts to distinguish the jurisdiction of the Court, in the case at bar, from the jurisdictional question decided in the Oil Workers, Employer's Group, Montgomery-Ward and Gypsum cases, supra. In doing so, plaintiff contends that the Court, in those cases, had before it final directive orders of the National War Labor Board in which there were proper adversary parties, while in the matter now pending before Regional War Labor Board VII, its adversary is an Union that cannot be certified as an appropriate bargaining agent for the busheling-room employees of defendant until a decision is rendered by the Supreme Court of the United States, in the proceedings there pending, as aforestated. In other words, plaintiff contends that the proceedings before the National War Labor Board are adversary proceedings; that without a properly designated adversary no labor dispute can exist within the meaning of the War Labor Disputes Act, hence the Regional War Labor Board has no jurisdiction to compel a hearing, involving terms and conditions of employment with the Union in question, because it has not been properly certified as an appropriate bargaining agent by the National Labor Relations Board.

 The jurisdiction of the National War Labor Board over a "labor dispute" is not dependent upon the identity of the parties to such dispute, nor their legal relationship. Section 2(d) of the War Labor Dispute Act,[10] declares that a "labor dispute" within the meaning of said Act "shall have the same meaning as in section 2 of the National Labor Relations Act." Section 2 (9) of the National Labor Relations Act,[11] is as follows: "The term 'labor dispute' includes any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee." Section 7 (a) (1) of the War Labor Disputes Act is as follows: "(1) Whenever the United States Conciliation Service (hereinafter called the 'Conciliation Service') certifies that a labor dispute exists which may lead to substantial interference with the war effort, and cannot be settled by collective bargaining or conciliation, to summon both parties to such dispute before it and conduct a public hearing on the merits of the dispute. If in the opinion of the Board a labor dispute has become so serious that it may lead to substantial interference with the war effort, the Board may take such action on its own motion. At such hearing both par-

[8] Pennsylvania R. R. Co. v. United States Railroad Labor Board, 261 U.S. 72, 43 S.Ct. 278, 67 L.Ed. 536; United States v. Los Angeles & S. L. R. R. Co., 273 U.S. 299, 47 S.Ct. 413, 71 L.Ed. 651.
[9] Employers Group of Motor Freight Carriers, Inc. et al. v. National War Labor Board, supra.
[10] Tit. 50 U.S.C.A.Appendix, § 1502 (d).
[11] 29 U.S.C. § 152(9), 29 U.S.C.A. § 152(9).

ties shall be given full notice and opportunity to be heard, but the failure of either party to appear shall not deprive the Board of jurisdiction to proceed to a hearing and order."

The language used in the latter section of the War Labor Disputes Act, supra, is broad enough to give the National War Labor Board jurisdiction over *any* labor dispute which "in the opinion of the Board * * * may lead to substantial interference with the war effort." "It is not for any court to sit in review of the wisdom of their action or substitute its judgment," on the question as to what constitutes such a labor dispute.[12] The National War Labor Board obtains jurisdiction over a labor dispute either upon certification from the Secretary of Labor and the United States Conciliation Service, or upon its own motion.[13] After it assumes jurisdiction it is authorized to hold a hearing regarding said labor dispute. Such disputes are generally referred by the National Board to one of its Regional Boards. If the Regional Board deems the matter ready for hearing, it may summon the parties before it, but notice, that under the Act "The failure of the party to appear shall not deprive the Board of jurisdiction to proceed to a hearing and order." There is no penalty provided in the Act for failure of a party to appear at such a hearing, nor is there any power given to the Board to compel the attendance of a party, as such, in obedience to its summons. Section 7(a) (3) and (4) gives the Board the power of "subpoena" and outlines a mode whereby the attendance of witnesses may be compelled. Under this provision of the Act a party may be subpoenaed as a witness but he cannot be compelled to participate in the hearing as a party.

What is the purpose of holding such hearing? It is not "to determine the legal rights and obligations of employer and employe, or to protect and enforce such rights, but merely to decide how such rights, in the Board's opinion, are to be exercised in the public interest in view of the state of war. * * * The function of the Board is to give expression of its views of the moral obligation of each side to the controversy, as members of society,

to agree upon a basis for cooperation in the public interest. * * * There is no constraint upon the parties to do what the Board may decide they should do, except moral constraint."[14]

In Pennsylvania Railroad v. Labor Board, supra, 261 U.S. 72, 43 S.Ct. 278, 282, 67 L. Ed. 536, the contention was made that no hearing could be held by the Labor Board created pursuant to the Transportation Act of 1920,[15] until the question "who may represent the employees as to the grievances, rules and working conditions" was first determined. The Labor Board, set up under the Transportation Act of 1920, was given powers analogous to those given to the National War Labor Board under the War Labor Disputes Act. In disposing of the above contention Mr. Chief Justice Taft said: "Such a construction would give either side an easy opportunity to defeat the operation of the act and to prevent the Labor Board from considering any dispute. It would tend to make the act unworkable. If the Board has jurisdiction to hear representatives of the employees, it must of necessity have the power to determine who are proper representatives of the employees. That is a condition precedent to its effective exercise of jurisdiction at all." As pointed out above, the National War Labor Board is given the power to hold hearings involving labor disputes in which "any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons * * * seeking to arrange terms or conditions of employment," is involved. The jurisdiction so given the Board contains the power to determine who are proper representatives of employees involved in a labor dispute which has been certified to the Board or of which the Board takes jurisdiction of its own motion. The limitation upon its power to determine, or adjudicate, by a binding order, the appropriate bargaining agent for employees engaged in a labor dispute is recognized by the Board. The policy of the National War Labor Board, concerning such matters, is stated by Mr. Jesse Freidin, public member and the General Counsel of the National War Labor Board, in the affidavit attached to the motion to dis-

---

[12] Kiyoshi Hirabayashi v. United States, 320 U.S. 81, 93, 63 S.Ct. 1375, 1382, 87 L.Ed. 1774.

[13] Tit. 50 U.S.C.A.Appendix, § 1507 (a) (1).

[14] Baltimore Transit Co. v. Flynn, D. C., 50 F.Supp. 382, 387. Oil Workers Internat'l Union, etc., v. Texoma Natural Gas Co., 5 Cir., 146 F.2d 62.

[15] 45 U.S.C.A. § 146.

miss, as follows: "In accordance with the principles governing War Labor Board action in cases involving the jurisdiction and rulings of the National Labor Relations Board, it is the established practice of the National War Labor Board and its agents to accept certifications of the National Labor Relations Board as determining the representative selected by the majority of the employees involved so long as such certifications remain in effect. Where the National Labor Relations Board has ordered a company to bargain with a labor union and the company resists that order with the object of litigating the propriety of the Labor Relations Board's certification, and a labor dispute develops which is certified to the National War Labor Board, the War Labor Board, if it deems it necessary to do so, will issue an order prescribing the terms and conditions of employment, without prejudice, however, to any judicial determination of the propriety of the certification. The company's refusal to bargain with the union, however, remains an issue determinable only by the National Labor Relations Board and the appropriate courts. In such a case, the National War Labor Board will merely provide the terms and conditions of employment which shall govern the relationships between the parties, and in fixing such terms and conditions, the War Labor Board does not undertake to order the company to bargain collectively. (See Sec. I, Principles Governing Action of War Labor Board on Cases Involving Jurisdiction and Rulings of National Labor Relations Board, C. C. H. Labor Law Service, Vol. 1A, par. 11,215.01.) That practice and those principles would govern the two dispute cases here involved."

It appears from the foregoing that labor dispute proceedings before the National War Labor Board are not "adversary proceedings" in the usual sense of that legal terminology. An adversary proceeding, as commonly understood, presupposes a compulsory attendance of parties at a judicial or quasi judicial proceeding and the forfeiture of some right for the failure to attend. Proceedings before the National War Labor Board are not of that character, they are, in effect, legislative inquisitions, and the parties thereto are only nominal.[16] The failure of the plaintiff to attend as a party the hearing scheduled by Regional War Labor Board VII, in the dispute matter in question, will work no forfeiture of any kind against plaintiff. Nothing that defendants have the power to do or allegedly have threatened to do can impair the legally-protected interests of plaintiff.[17] Plaintiff will not suffer any legal injury or damage thereby.[18]

The jurisdiction of the National War Labor Board is not inter-related nor dependent upon the action of any other agency of the Government first determining who are the proper parties to a labor dispute pending before it. Such fact may be determined by the War Labor Board apriori from the nature of the dispute.

Plaintiff has no cause of action at law or in equity against defendants or either of them.

For the reasons stated, this Court does not have jurisdiction of the subject matter of this action. The temporary restraining order, heretofore issued herein, was improvidently granted. Said restraining order is hereby vacated and this cause is dismissed with prejudice.

Submit order in accordance with local practice.

[16] National Labor Relations Board v. National Mineral Co., 7 Cir., 134 F.2d 424–426.

[17] Fitts v. McGhee, 172 U.S. 516, 529, 530, 19 S.Ct. 269, 43 L.Ed. 535; Champlin Refining Co. v. Corporation Commission, 52 S.Ct. 559, 286 U.S. 210, 237, 238, 76 L.Ed. 1062, 86 A.L.R. 403; Federal Trade Commission v. Claire Furnace Co., 274 U.S. 160, 47 S.Ct. 553, 71 L.Ed. 978.

[18] Myers v. Bethlehem Shipbuilding Corporation, 303 U.S. 41, 50–52, 58 S.Ct. 459, 82 L.Ed. 638.