**TAYLOR et al. v. BROTHERHOOD OF RY. & STEAMSHIP CLERKS, FREIGHT HANDLERS, EXPRESS & STATION EMPLOYEES et al.**

No. 4594–51.

United States District Court
District of Columbia, Civil Division.
June 25, 1952.

Joseph C. Waddy, Howard Jenkins, Jr., Washington, D. C., Juanita Jackson Mitchell, John R. Hargrove, Baltimore, Md., for plaintiffs.

Edward J. Hickey, Jr., Washington, D. C. (James L. Crawford, Gen. Counsel, Brotherhood of Ry. & Steamship Clerks, Cincinnati, Ohio, of counsel), for defendant, Brotherhood of Ry. Clerks.

Stephen Ailes, Guy Farmer, Washington, D. C. (F. E. Baukhages, Baltimore, Md., Gen. Counsel, Baltimore & Ohio R. Co., Steptoe & Johnson, Washington, D. C., Mulholland, Robie & Hickey, Washington, D. C., of counsel), for defendant Baltimore & O. R. Co.

LETTS, District Judge.

Plaintiffs are Negro employees of the defendant Baltimore & Ohio Railroad and members of the so-called craft or class of clerks, freight handlers, express and station employees. Defendant Brotherhood of Railway and Steamship Clerks is the collective bargaining representative under the Railway Labor Act, 45 U.S.C.A. § 151 et seq., of the members of this craft.

The facts alleged by the complaint may be summarized as follows: on January 10, 1951 Congress amended the Railway Labor Act so as to permit railroads and labor organizations representing employees under said Act to enter into union shop agreements requiring, as a condition of their continued employment with the railroad, that all employees shall become members of the labor organization representing their particular craft or class. Section 2 Eleventh, 45 U.S.C.A. § 152 Eleventh (Supp.1951). The complaint recites that the Brotherhood and the defendant B. & O. entered into such a union shop agreement effective September 1, 1951, a copy of which is attached to the complaint.

It is alleged that by virtue of this agreement plaintiffs were required, as a condition of their continued employment with the B. & O. to become members of the Brotherhood by certain specified dates; that plaintiffs made application for membership in a local lodge of the Brotherhood, known as Local 511 alleged to be restricted to white members of the clerks craft; and that Brotherhood officials refused to furnish plaintiffs with application blanks for said Local 511.

The complaint further alleges that the defendant Brotherhood, through its agents, has asserted that the union shop amendment to the Railway Labor Act permits the Brotherhood to require plaintiffs, as a condition of their continued employment, to join and maintain membership in a local lodge known as Local 6067, alleged to be a segregated lodge maintained solely for Negro members of the Brotherhood on the B. & O. It is also alleged that agents of both defendants have informed plaintiffs that unless they joined the said segregated local action would be taken under the union shop agreement to cause their dismissal from service, and that they would lose their jobs.

The foregoing is asserted by plaintiffs to result in a violation of the union shop amendment to the Railway Labor Act, and the court is asked to issue a declaratory judgment construing the provisions of Section 2 Eleventh as forbidding defendants from requiring plaintiffs, as a condition of their continued employment with the B. & O., to join or maintain membership in the segregated lodge. Plaintiffs also seek injunctions, pendente lite and permanent, enjoining defendants from requiring plaintiffs, as a condition of their continued employment, to join and maintain membership in the segregated lodge, enjoining defendant B. & O. from discharging plaintiffs, and enjoining both defendants from taking any action pursuant to the union shop agreement to terminate plaintiffs' employment.

Defendants jointly move to dismiss the complaint or, in the alternative, they seek summary judgment, on the ground that the complaint fails to present a justiciable controversy. Defendants' motion is both supported and opposed by affidavits. Dep-

ositions were also taken by plaintiffs' counsel and filed with the court at the time of oral argument. Hearing was held on defendants' joint motion and upon plaintiffs' motion for an injunction pendente lite.

The specific statutory provision upon which plaintiffs rely is the proviso to Section 2 Eleventh (a) of the Railway Labor Act, 45 U.S.C.A. § 152 Eleventh (a) (Supp. 1951), by which Congress, in permitting railroads and labor organizations to make union shop agreements requiring union membership as a condition of continued employment, conditioned the right as follows:

> "Provided, That no such agreement shall require such condition of employment with respect to employees to whom membership is not available upon the same terms and conditions as are generally applicable to any other member or with respect to employees to whom membership was denied or terminated for any reason other than the failure of the employee to tender the periodic dues, initiation fees, and assessments (not including fines and penalties) uniformly required as a condition of acquiring or retaining membership."

It is this particular provision which plaintiffs claim defendants have violated and which they seek to have the court declare precludes the Brotherhood from requiring plaintiffs to join a local lodge alleged to be restricted to Negro employees.

On the other hand, defendants maintain that the only question properly involved under the statute is whether any action has been taken or is imminently threatened to terminate plaintiffs' employment. They argue that questions concerning admission to union membership, or restrictions concerning such membership, in and of themselves constitute no violation of the union shop amendment to the Railway Labor Act unless and until they are made the basis of employment termination.[1] In support of this contention, defendants say that the statutory prohibition that "no such agreement shall require such condition of employment"—that is, union membership as a condition of continued employment—for any reason other than those specifically allowed by Congress, plainly seeks to safeguard employment rights only and does not purport to regulate admission to union membership.

In opposition to this contention plaintiffs rely primarily upon Steele v. Louisville & Nashville R. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173, which they maintain secures to them the benefits of the union shop agreement entered into by defendants on a non-discriminatory basis. But the complaint contains no allegation that discrimination was practiced by defendants in their negotiation of the union shop agreement nor that any exists in its provisions. The union shop agreement does not seek to insure admission to all employees who apply for membership in the Brotherhood, nor does the Supreme Court's holding in the Steele case make unlawful a failure to do so. In holding that the Railway Labor Act requires a union organization in its negotiations of collective bargaining agreements to represent nonunion or minority union members of the craft without hostile discrimination, the Court also stated that "the statute does not deny to such a bargaining labor organization the right to determine eligibility to its membership, * * *." 323 U.S. 192, 65 S.Ct. 233, 89 L.Ed. 173.

■ The union shop amendment to the Railway Labor Act does not seek to legislatively restrict such right of the union. Congress was asked to provide that a union which segregates members into separate locals, or excludes any member of the craft from membership on the grounds of race, creed or color, is not entitled to act as representative of the craft under the Railway Labor Act and is not entitled to any of the

---

1. Defendants maintain that recognition of this construction of the statute as correct is implicit in the complaint since each allegation of unlawful conduct by defendants is predicated upon the statutory qualification "as a condition of their continued employment", and no act of defendants is alleged as unlawful except as it is asserted to control or seek to control plaintiffs' "continued employment".

provisions of said Act.[2] Congress was also asked to provide that any union shop agreement entered into by a labor organization which denied membership on the basis of race, color or creed would be unlawful.[3] Congress saw fit not to do so. Instead, it restricted the protection afforded under the amendment for denial of membership or for discrimination to protection of the employee's job.[4]

Under the circumstances, the decision of the Supreme Court in the Steele case is inapplicable to the problem here presented, and the alleged refusal of the Brotherhood to admit plaintiffs to membership in an unsegregated local does not constitute a violation of the union shop amendment to the Railway Labor Act if plaintiffs are not deprived of their employment for failure to obtain union membership. The proper function of the court is to abide by the terms used by Congress in the statute. It cannot decide what ought to be done with respect to the alleged restriction of membership to plaintiffs on a segregated basis only; its function is merely to ascertain what Congress has provided. Cf. Di Giorgio Fruit Corp. v. National Labor Relations Board, D.C.Cir., 1951, 191 F.2d 642, certiorari denied 342 U.S. 869, 72 S.Ct. 110.

Thus, the question of whether the statute precludes defendants from requiring plaintiffs to join a racially segregated lodge is not properly before the court as a justiciable issue unless the terms of the union shop agreement here involved provide for termination of plaintiffs' employment for reasons other than those expressly allowed by Congress, or the agreement is sought to be applied so as to result in such termination.

It is undisputed that the union shop agreement entered into by defendants con-

---

2. Hearings before House Committee on Interstate and Foreign Commerce on H. R. 7789, 81st Cong., 2d Sess. (1950), pp. 294–295, 285–286; Hearings before Senate Sub-committee of the Committee on Labor and Public Welfare on S. 3295, 81st Cong. 2d Sess. (1950), pp. 301–302, 244–245.

3. House Hearings, p. 274; Senate Hearings, p. 237.

4. H.R.Rep. No. 2811, 81st Cong., 2d Sess. (1950), states, p. 5:

"The statutes of some labor organizations subject to the Railway Labor Act establish qualifications for membership which cannot be met by some employees, or provide for denial of, or expulsion from, membership on grounds other than failure to tender periodic dues, initiation fees, and assessments. The proviso clauses in paragraph eleventh (a) are designed to protect such employees. Thus, if an employee is denied membership, or is eligible for membership only on terms and conditions not generally applicable to other members, he cannot be required to relinquish his job because of his failure to join a labor organization."

The report of the Senate Committee, Sen.Rep. No. 2262, 81st Cong., 2d Sess. (1950), states (pp. 3–4):

"During the course of the hearings before the subcommittee evidence was introduced showing that the constitutions of some labor organizations established qualifications for membership which can-

not be met by some railroad employees. The proposal was made by Senator Lehman that your committee's intention be made clear that such employees were not to be deprived of their employment as a result of the exercise of the right extended by this bill. Your committee desires to make it clear that the proviso clauses in paragraph eleventh (a) are designed to protect such employees; thus if an employee is denied membership or is eligible for membership only on terms and conditions not generally applicable to other members, he cannot be requested to give up his job because of his failure to join a labor organization. Furthermore, if membership is denied or if an employee is expelled from membership for any reason other than his failure to tender the uniformly required periodic dues, initiation fees, and assessments, he cannot be required to relinquish his job because of his failure to join or remain a member of a labor organization. Your committee also desires to make it clear that nothing in this bill is intended to modify in any way the requirement that the authorized bargaining representative shall represent all the employees in the craft or class, including nonunion employees as well as members of the union, fairly, equitably, and in good faith. See Steele v. Louisville & Nashville Railroad Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173, and Tunstall v. Brotherhood of Locomotive Firemen and Enginemen, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187.

tains no provision in violation of plaintiffs' rights under the statute. In fact, the limitations on the requirement of union membership which are contained in the agreement are virtually in the language of the amendment to the Railway Labor Act. Paragraph 3 of the agreement states:

"Nothing in this agreement shall require an employee to become or remain a member of the organization if such membership is not available to such employee upon the same terms and conditions as are generally applicable to any other member, or if the membership of such employee is denied or terminated for any reason other than the failure of the employee to tender the periodic dues, initiation fees, and assessments (not including fines and penalties) uniformly required as a condition of acquiring or retaining membership. * * *."

Accordingly, the issue presented narrows into a question of whether any action taken by defendants as alleged in the complaint, or as further disclosed by undisputed facts set forth in the affidavits and depositions on file, makes termination of plaintiffs' employment sufficiently certain and imminent to present an actual controversy; or whether such termination is remote, speculative, or uncertain because subject to anticipated future contingencies, and therefore is not an actual controversy determinable by judicial action.

▮ It is well established that the courts will entertain only actual controversies between parties having adverse legal interests of certainty and immediacy, and will not judicially determine abstract questions or render a decree upon a hypothetical state of facts framed for the purpose of invoking the advice of the court without a real case. Liberty Warehouse Co. v. Grannis, 273 U.S. 70, 47 S.Ct. 282, 71 L. Ed. 541; Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688; Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826.

▮ These requirements are no less strict in a declaratory judgment proceeding. Alabama State Federation of Labor

v. McAdory, 325 U.S. 450, 65 S.Ct. 1384, 89 L.Ed. 1725; Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617; Altvater v. Freeman, 319 U.S. 359, 63 S.Ct. 1115, 87 L.Ed. 1450. A party seeking declaratory relief must be confronted by a presently existing danger to established legal rights, not a contingent, potential, or possible injury or liability. Johnson v. Interstate Transit Lines, 10 Cir., 163 F.2d 125, 172 A.L.R. 1242; Maryland Casualty Co. v. United Corp. of Mass., D.C., 29 F.Supp. 986; Bettis v. Patterson-Ballagh Corp., D.C.S.D.Cal., 16 F. Supp. 455, appeal dismissed, 9 Cir., 97 F. 2d 992. It is settled in this jurisdiction and elsewhere that claims based merely upon assumed potential invasions of rights are not enough to warrant judicial determination, by way of declaratory judgment or otherwise. National War Labor Board v. Montgomery Ward Co., 79 App.D.C. 200, 144 F.2d 528, certiorari denied 323 U.S. 774, 65 S.Ct. 134, 89 L.Ed. 619; Eccles v. Peoples Bank, 333 U.S. 426, 68 S.Ct. 641, 92 L.Ed. 784; San Francisco Lodge No. 68 v. Forrestal, D.C.N.D.Cal., 58 F.Supp. 466.

Plaintiffs contended on oral argument and maintain in their brief that defendants' "threats" to cause their discharge from employment for failure to join the segregated lodge of the Brotherhood constitutes an actual controversy and violates the union shop amendment to the Railway Labor Act. It is alleged in the complaint that plaintiffs have been informed by the Brotherhood's General Chairman that they will not be permitted to join the local lodge to which they seek admission, but "would be required as a condition of their continued employment with the Baltimore & Ohio to join the segregated Local 6067." Plaintiffs contend this is a threat which makes them "literally subject to the penalty of dismissal from service as provided for in the agreement."

However, the threat, if it be such, is not real until some action is taken pursuant to the requirements of the union shop agreement entered into by defendants to deprive plaintiffs of their employment for failure to join the Brotherhood. Until

then, at the earliest, no justiciable issue arises. It may never arise. Reference to the terms of the union shop agreement attached by plaintiffs to their complaint discloses that termination of plaintiffs' employment is not imminent but is remote and clearly uncertain of occurrence.

Under Section 4(a) of the agreement, the Brotherhood is required to give notice in writing to the B. & O. of any employee who has failed to comply with the agreement and thus is not entitled to continue in employment. Upon such written notification, the B. & O. is required to notify the employee in writing within 10 days from receipt of such notice, and an employee who disputes his failure to comply with the agreement is entitled to a hearing upon request. The section further provides that such a request for hearing shall stay the termination of employment until the hearing is held and the carrier's decision is rendered. The agreement further provides in Section 4(b) that if the carrier concurs in the requested dismissal, an appeal may be taken by the employee to the highest officer of the railroad designated to handle such appeals. Such an appeal will also stay action on the termination of employment until the decision on the appeal is rendered.

Consequently, before any employment of plaintiffs could be terminated, the foregoing action required by the union shop agreement would have to be completed. The complaint does not allege that the first step of this procedure has been taken. In fact, the affidavit and deposition of the Brotherhood's General Chairman expressly state that it has not been taken, and this is not disputed by plaintiffs. Moreover, there is not only no indication that such action will be taken, but the affidavit and deposition of the Brotherhood's General Chairman specifically state that if plaintiffs are denied membership in the local lodge to which they seek admission, no such action will be taken.

Furthermore, as yet it is not even established that plaintiffs will be denied admission to the local lodge of their choice. Certain undisputed facts set forth in the affidavits and depositions on file make this clear.

The affidavit of the Brotherhood's General Chairman states that membership application blanks were forwarded to plaintiffs on November 7, 1951, following the institution of this action; that plaintiff James Taylor and plaintiff Blake were requested to designate whether they desired to join Lodge 511 or Lodge 6067, and to return such applications with the required initiation fees to the General Chairman for forwarding to the lodge designated for action by it; that plaintiff Howard Taylor was informed that since he had previously been a member of Lodge 6067, suspended for non-payment of dues, the Brotherhood's internal rules governing former members (white as well as colored) required his reaffiliation with the lodge from which suspended, after which he would have the privilege of requesting a transfer to Lodge 511 if he so desired. The affidavit further recites that plaintiffs James Taylor and Blake returned their signed applications requesting membership in Lodge 511; that these applications have been forwarded to said lodge for action by it; that plaintiff Howard Taylor returned his application requesting readmission to Lodge 6067; and that said application would be forwarded to said lodge for action.

The affidavits filed by plaintiffs in opposition to defendants' motion admit that the application blanks were executed by them as aforesaid and returned to the General Chairman as directed for forwarding to the lodges designated by plaintiffs.

The affidavit of the Brotherhood's General Chairman further answers plaintiffs' claim that they were informed they could not join Lodge 511 by stating that the authority to admit or reject a person for membership is solely that of the lodge to which the application is presented; that Lodge 511 had not yet acted on plaintiffs' applications; that no action, as required by the union shop agreement, seeking to terminate plaintiffs' employment has been initiated; and that in the event that plaintiffs were rejected for membership by

Lodge 511, on advice of the Brotherhood's President, no action to terminate plaintiffs' employment would be taken by the Brotherhood.

None of the foregoing is contradicted in the affidavits filed by plaintiffs, and the depositions taken by plaintiffs' counsel confirm the fact that plaintiffs' applications for membership in the lodges designated by each of them are awaiting the action of these lodges. Moreover, the deposition of the Brotherhood's General Chairman shows beyond dispute that no action required under the union shop agreement to terminate an employee's services for failure to comply with its terms has been taken by either defendant.

■ Under such circumstances I cannot agree that plaintiffs are, as they contend in their brief, "literally subject to the penalty of dismissal from service as provided for in the agreement", or that the facts establish the existence of a real and substantial dispute between the parties as to their respective rights under the union shop amendment to the Railway Labor Act. As I see it, the record here plainly shows that any violation of plaintiffs' rights to continued employment rests upon an assumed course of action by defendants which is so dependent and contingent on the happening of hypothetical future events as to be not only remote but completely uncertain of occurrence. What plaintiffs seem to be seeking is a declaration of their rights under the statute without having had them challenged. As yet, no action has been taken by defendants with respect to plaintiffs' "continued employment" which would give rise to an actual dispute between the parties as to the requirements of the statute. Such a case is manifestly premature and not properly the subject of a declaratory judgment or injunctive relief.

In addition to what has been said heretofore concerning the speculative nature of any termination of employment, plaintiffs' argument that their discharge has been "threatened" by agents of both defendants appears to me to be governed by the decision of the Court of Appeals of this jurisdiction in National War Labor Board v. Montgomery Ward & Co., Inc., 79 App. D.C. 200, 144 F.2d 528, certiorari denied 323 U.S. 774, 65 S.Ct. 134, 89 L.Ed. 619. In dismissing a suit to enjoin and annul a directive of the War Labor Board, the court held that it could not entertain an action based on mere forecasts and predictions of irreparable injury which might never occur. In the course of its opinion the court said, 144 F.2d 528, 531:

"* * * if the complaint were interpreted as alleging that threats have been made, the allegation would come only to this, that the defendants have used unspecified and perhaps vague or tentative expressions which, in the plaintiff's opinion, indicate a sufficient inclination toward taking some step or other for the enforcement of the Board's order so that they may be characterized as threatening. The complaint therefore alleges no facts which indicate more than a possibility of any action by the defendants which might cause injury to the plaintiff. It follows that the complaint states no valid claim for review of the Board's order."

The logic of the court's reasoning applies with equal force here. As has been shown, not only is plaintiffs' discharge completely uncertain and speculative, but at present so also is action on their applications for membership in the particular union lodge of their choice, before which no question concerning discharge could even arise.

In Douglas Auto Parts, Inc., v. Fleming, D.C.D.C., 50 F.Supp. 928, Judge Bailey of this Court reasoned to the same effect in granting defendant's motion for summary judgment for failure to present a justiciable controversy in an action involving certain alleged threats by a subordinate official of the Wage-Hour Division. With reference to such threats, Judge Bailey said:

"In this and in the conversations with Elson there is no threat. Elson had no authority to prosecute, and there is nothing to show that the Administrator had been requested to take action or that he contemplates taking action against the plaintiff."

Similarly here, no action seeking to terminate plaintiffs' employment has been taken by either defendant, and the affidavit and deposition of the Brotherhood's General Chairman disclose that no such action is contemplated. Even assuming the Brotherhood were to initiate action under Section 4(a) of the union shop agreement to secure the termination of plaintiffs' employment, defendant B. & O. might find the requested discharge unjustified under the agreement. Accordingly, as of now, any deprivation of plaintiffs' employment is completely uncertain of occurrence.

Courts of other jurisdictions have also applied the principles of these District of Columbia cases and denied declaratory or injunctive relief under factual circumstances analogous to those here presented for failure to present a justiciable controversy. England v. Devine, D.C.Mass., 59 F.Supp. 379; San Francisco Lodge No. 68 of the International Association of Machinists v. Forrestal, D.C.N.D.Cal., 58 F.Supp. 466, 468. In the last cited case, the court denied injunctive relief and a declaratory judgment and dismissed the complaint on the ground that it failed to present a justiciable controversy, stating:

> "It appears to the court that no justiciable controversy in the legal sense exists and therefore the court should not exercise its power under the Federal Declaratory Judgment Act. That the exercise of this power is within judicial discretion is so declared by respectable authority [citing cases]. An actual controversy is not one which may occur, but one which in fact exists. * * * The record here conclusively shows that plaintiff's claim rests upon an anticipation as to the future course of action of defendants and not upon a present actual factual issue.

> "I am also of the opinion that the record does not disclose any grounds for general equitable relief by restraining order, injunction or the like. That a member of plaintiff association may violate the rules of employment, that he may be discharged therefor, that he may be consequently denied clear-

ance and referral—these are speculative and conjectural factors."

Like the foregoing case, here too the record shows that plaintiffs' claim rests upon a speculative anticipation of a future course of action by defendants which may never occur, and not upon a present actual factual issue. This being the case, were the Court to grant the relief requested, it would be doing no more than rendering an advisory opinion upon a hypothetical set of facts.

Plaintiffs' motion for an injunction pendente lite is denied. Defendants' motion for summary judgment is granted, and the cause is dismissed for failure to state a claim upon which relief can be granted.

Counsel will present an order in conformity with this opinion.