**EMPLOYERS GROUP OF MOTOR FREIGHT CARRIERS, Inc., et al. v. NATIONAL WAR LABOR BOARD et al.**

No. 8680.

United States Court of Appeals
District of Columbia.

Argued May 8, 1944.

Decided June 2, 1944.

Mr. Ralph H. Cahouet, of Boston, Mass., of the Bar of the Supreme Court of Massachusetts, pro hac vice, by special leave of Court, with whom Mr. J. Ninian Beall, of Washington, D. C., was on the brief, for appellants. Mr. Eugene X. Murphy, of Washington, D. C., also entered an appearance for appellants.

Assistant Attorney General Francis M. Shea, with whom Messrs. Edward M. Curran, United States Attorney, of Washington, D. C., Joseph A. Fanelli, Special Assistant to the Attorney General, and Robert Burstein, Attorney, Department of Justice, were on the brief, for appellees.

Before MILLER, EDGERTON, and ARNOLD, Associate Justices.

EDGERTON, Associate Justice.

This is a suit to annul and enjoin a "directive order" of the National War Labor Board. The plaintiffs include an association of motor freight carriers and a group of individuals who represent some 300 trucking companies engaged in the transportation of freight in Boston and throughout New England. The defendants are the National War Labor Board, its Chairman, its Trucking Commission, the Director of Economic Stabilization, and the Administrator of the Office of Price Administration.

The complaint sets forth that the plaintiffs and their employees failed to reach an agreement regarding wages and hours; that the Conciliation Service of the United States Department of Labor was also unsuccessful; that the Department referred the dispute to the Board and the Board to its Trucking Commission.[1] In April, 1943, after hearings, the Trucking Commission made findings and issued "the following Directive Order: 1. Employees * * * shall receive an increase of $2.75 per week. 2. All work performed in excess of 8 hours in any regular working day shall be paid for at one and a half times the regular straight time rates. 3. Employees not working on the holidays designated * * * shall receive 8 hours pay at straight time rates. * * *" The Board declined to review this action of the Trucking Commission and declared it final.

The complaint asserts that the Board's findings and order are "unlawful, being violative of applicable statutes and executive orders of the President of the United States, are arbitrary and capricious, and unsupported by any material evidence of record, have resulted and will continue to result, unless changed and modified, in irreparable injury to the employers affected thereby * * *." More specifically, the complaint asserts that the Board considered supposed wage inequalities, that no such inequalities actually existed within the New England area, that no others were pertinent, and that the Board had been forbidden by Executive Order, No. 9328, 50 U.S.C.A.Appendix, § 901 note, to consider inequalities. The complaint also asserts that it is "impossible for the plaintiffs to absorb the said award, and the industry is confronted with outright failure and dissolution." It states that findings of the Board, in other cases, "have been enforced by governmental seizure of the property and business of allegedly non-complying respondents." It concludes that "obviously plaintiffs must comply" with the Board's directive order, but does not say that they have complied or are complying.

We think the District Court was right in granting the defendants' motion to dismiss the complaint. The Board's order is not reviewable.[2]

It is clear and undisputed that no statute authorizes review of the War Labor Board's orders. As we point out be-

[1] The Board had provided by order that "Any ruling by the Commission shall be deemed to be the act of the National War Labor Board unless and until reversed or modified by the Board * * *."

[2] Baltimore Transit Co. v. Flynn, D.C. D.Md., 50 F.Supp. 382. Cf. Helco Products Co., Inc. v. McNutt, 78 U.S.App. D.C. 71, 137 F.2d 681, 149 A.L.R. 345.

low, the legislative history of the War Labor Disputes Act implies a positive intention that these orders should not be reviewed Aside from that important and probably conclusive fact, the question is whether general equitable principles authorize review. We think they do not. Without suggesting that the factors named are in themselves sufficient, the cases in which the Supreme Court has sustained suits, not specially authorized by statute, to annul or enjoin alleged illegal administrative action may be classified for present purposes in two groups. Either (1) the administrative action was directly injurious to legally protected interests of the plaintiff [3] or (2) it furnished a basis for probable judicial proceedings against the plaintiff.[4] Examples of the first sort are United States v. Lee,[5] a suit to recover the plaintiff's land which government officers were withholding; Waite v. Macy,[6] a suit to import goods which customs officers were excluding; American School of Magnetic Healing v. McAnnulty,[7] a suit to obtain mail which the Post Office was withholding; and Utah Fuel Co. v. National Bituminous Coal Commission,[8] a suit to prevent disclosure of information alleged to be confidential. Examples of the second sort are Shields v. Utah Idaho Railroad Co.,[9] a suit to enjoin prosecution under the Railway Labor Act for noncompliance with an administrative order; Philadelphia Company v. Stimson,[10] a suit to set aside harbor lines established by the Secretary of War and enjoin criminal prosecution for disregarding them; and Panama Refining Co. v. Ryan,[11] a suit to enjoin penal enforcement of orders issued under the National Industrial Recovery Act. The present case is of neither sort.

Judicial review of administrative action cannot be confined by a formula, and existing categories may be extended if need arises. But there is no need here. No money, property, or opportunity has been taken or withheld from the appellants, and no one threatens any such act. No one threatens, and no one could maintain, either judicial or administrative proceedings against the appellants upon the authority of the Board's order. In these circumstances there is no occasion for review of the Board's order.

The War Labor Board was created in view of the declarations of war, and the no-strike agreement of representatives of labor and industry, by Executive Order 9017.[12] This Order provided that "the procedures for adjusting and settling labor disputes which might interrupt work which contributes to the effective prosecution of the war shall be as follows: (a) The parties shall first resort to direct negotiations or to the procedures provided in a collective bargaining agreement. (b) If not settled in this manner, the Commissioners of Conciliation of the Department of Labor shall be notified if they have not already intervened in the dispute. (c) If not promptly settled by conciliation, the Secretary of Labor shall certify the dispute to the Board * * *. After it takes jurisdiction, the Board shall finally determine the dispute, and for this purpose may use mediation, voluntary arbitration, or arbitration under rules established by the Board."

The Act of October 2, 1942, sometimes called the Inflation Control Act, provides in § 1 "That in order to aid in the effective prosecution of the war, the President is authorized and directed * * * to issue

---

[3] Stark v. Wickard, 321 U.S. 288, 64 S.Ct. 559.

An "actual or threatened interference with the rights of the persons complaining" is as necessary to a declaratory judgment as to an injunction. Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 324, 325, 56 S.Ct. 466, 472, 80 L.Ed. 688.

[4] Columbia Broadcasting System, Inc. v. United States, 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563, involved the interpretation of statutory provisions for review; otherwise the case would seem to subject a third type of administrative action to judicial review on general equitable principles, viz., administrative exercise of "rule-making power" (page 420 of 316 U.S., page 1202 of 62 S.Ct., 86 L.Ed. 1563) which threatens injury to the plaintiff by mere administrative application of the adopted rule. The present case involves no such circumstances.

[5] 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171.

[6] 246 U.S. 606, 38 S.Ct. 395, 62 L.Ed. 892.

[7] 187 U.S. 94, 23 S.Ct. 33, 47 L.Ed. 90.

[8] 306 U.S. 56, 59 S.Ct. 409, 83 L.Ed. 483.

[9] 305 U.S. 177, 183, 59 S.Ct. 160, 83 L.Ed. 111.

[10] 223 U.S. 605, 32 S.Ct. 340, 56 L.Ed. 570.

[11] 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446.

[12] Jan. 12, 1942, 50 U.S.C.A. Appendix, § 1507 note, 7 Fed.Reg. 237.

a general order stabilizing prices, wages, and salaries, affecting the cost of living * * *. The President may, except as otherwise provided in this Act, thereafter provide for making adjustments with respect to prices, wages, and salaries, to the extent that he finds necessary to aid in the effective prosecution of the war or to correct gross inequities."[13] This Act was immediately followed by Executive Order 9250, which created the Office of Economic Stabilization. By this Order the functions of the War Labor Board were "extended to cover all industries and all employees" and the Board was "authorized to carry out the wage policies stated in this Order."[14] The Order forbids increases or decreases in wage rates without the Board's approval,[15] and forbids approval of increases not "necessary to correct maladjustments or inequalities, to eliminate substandards of living, to correct gross inequities, or to aid in the effective prosecution of the war. Provided, however, that where the National War Labor Board or the Price Administrator shall have reason to believe that a proposed wage increase will require a change in the price ceiling of the commodity or service involved, such proposed increase, if approved by the National War Labor Board, shall become effective only if also approved by the Director."[16]

The Board's directive order in this case was expressly issued by virtue of the powers vested in the Board by the two Executive Orders which we have cited, 9017 and 9250.

■ The Inflation Control Act provides that "No employer shall pay, and no employee shall receive, wages or salaries in contravention of the regulations promulgated by the President under this Act."[17] The regulations promulgated by the President in Executive Order 9250 forbid the adoption, without the Board's approval, of a new wage scale. But neither Executive Order 9250 nor any other regulation forbids adherence to an old wage scale after the Board has approved a new one. Appellants will not, by declining to adopt the new scale, subject themselves to the penalties which the Inflation Control Act provides for violation of its provisions,[18] or to any other penalties.

■ The Board's action is not even mandatory in form. It is entitled "Directive Order," introduced by the phrase "the following Directive Order," and described as an "Order of Approval." It nowhere uses the word "order," or any similar word, without qualification. "Directive" in this context appears to mean "directory," i. e. not mandatory.[19]

■■ The grant to the Board, in the War Labor Disputes Act, of authority to "decide" disputes and "provide by order the wages and hours * * * which shall be in effect * * *"[20] is not directly relevant here, since the Board's order was issued in April, 1943, and the War Labor Disputes Act was not passed until the following June. There is nothing to suggest that this Act should be given retroactive effect. But even if this Act had been in effect when the order was issued, the quoted language of the Act would not have made the order enforceable or reviewable. This is made clear both by the legislative history of this Act and by decisions of the Supreme Court under the Transportation Act of 1920.[21] It follows that the more limited language of Executive Order 9017, "the Board shall finally determine the dispute," does not make the order enforceable or reviewable.

While the War Labor Disputes Act was pending, Congress considered and rejected proposals to make the Board's orders enforceable and reviewable. On May 4, 1943, Senator Taft offered an amendment to the bill, S. 796, to permit enforcement through suits by the Attorney General. He said: "It seems to me essential that we get up a system of settling labor disputes. The natural way to do it is to confer power on the National War Labor Board to hear dis-

---

[13] 56 Stat. 765, 50 U.S.C.A. Appendix, § 961.

[14] Title III, §§ 1, 2; Oct. 3, 1942, 50 U.S.C.A. Appendix, § 901 note, 7 Fed.Reg. 7871, 7873.

[15] Title II, § 1.

[16] 7 Fed.Reg. 7871.

[17] § 5, 56 Stat. 765, 767, 50 U.S.C.A. Appendix, § 965.

[18] 56 Stat. 765, 768, 50 U.S.C.A. Appendix, § 971.

[19] "Directive * * * Pointing out the proper direction; guiding; prescribing; indicating." Century Dictionary. "Directive * * * Law=Directory * * * Obs." Oxford Dictionary.

[20] Act of June 25, 1943, § 7(a), 57 Stat. 163, 166, 50 U.S.C.A. Appendix, § 1507 (a).

[21] 41 Stat. 456.

putes and determine controversies, and then enforce its decisions in such manner as we may provide * * *." [22] This amendment was not adopted. The bill as it passed the Senate included a provision which would have made decisions of the Board "subject to review by the court on questions of law." This provision was rejected by the House of Representatives. The bill as reported to the House authorized the Chairman of the Board to issue interim stay orders, enforceable in court, for the "maintenance of the status quo," though not for the enforcement of wage increases or decreases.[23] But before the bill was reported by the Conference Committee, the Chairman of the Board in a letter to a member of the Committee opposed adoption of any provisions for enforcement or review. The record of compliance, the Chairman said, "indicates that no legal change in the status of the Board's orders is necessary. These orders are in reality mere declarations of the equities of each industrial dispute, as determined by a tripartite body in which industry, labor, and the public share equal responsibility; and the appeal of the Board is to the moral obligation of employers and workers to abide by the no-strike, no-lock-out agreement and in conformance therewith to carry out the directives of the tribunal created under that agreement by the Commander in Chief. Since the bill does not, as we understand it, permit the Board to seek enforcement of its orders in the court, the Board's orders are to remain, as we think they should remain, without specific legal sanctions. This being the case, it would seem to us inconsistent to extend to losing parties the privilege of delaying the outcome by taking the case into court for review * * *. We respectfully submit that for the duration of the war it would be in the best interests of the country to permit the War Labor Board to function as it has in the past 16 months, without the right to apply to the courts for legal sanc-

tions and without being subject to court review of its decisions." [24] This view prevailed. The Conference Committee, on consideration of Chairman Davis's letter,[25] omitted from the bill all provision for enforcement or review. Accordingly Senator Connally, Chairman of the Conference Committee and co-author of the War Labor Disputes Act, informed the Senate on June 12, 1943, that "* * * there is no jurisdiction whatever conferred by this bill providing for resort to the United States district court, except the one mentioned by the Senator from Connecticut [under Sec. 8 relating to strike notices], is merely the right to go there for a civil action for damages, and no jurisdiction whatever is given over labor disputes." [26] In response to a question why the provision for review of questions of law had been eliminated Senator Connally said: "The conferees struck out that provision on the ground that this was a summary measure, it was a wartime measure, it was an emergency measure. They did not care to invite appeals to the courts, and delays * * *." [27]

The Transportation Act of 1920 [28] created a Railroad Labor Board which was composed, like the present War Labor Board, of representatives of employees, employers, and the public.[29] It provided that "The Labor Board shall hear, and as soon as practicable and with due diligence decide, any dispute" [30] not decided by certain Adjustment Boards, and that the decisions of the Labor Board "shall establish rates of wages * * *." [31] Despite this language, which closely resembles that of the War Labor Disputes Act, the Supreme Court held in the second Pennsylvania case that "there is nothing compulsory in the provisions of the statute as against either the company or the employees upon the basis of which either acquired additional rights against the other which can be enforced in a court of law," or on the basis of which either can "be forced into compliance with the statute or with the judg-

---

[22] 89 Cong.Rec. 3898.

[23] § 10(a), H.R.Rep. No. 440, 78th Cong., 1st Sess. (1943) 4.

[24] 89 Cong.Rec. 5794-5.

[25] Senator Danaher, a dissenting member of the Committee, stated to the Senate: "That letter, Mr. President, was read to the conferees on Wednesday last. Whatever action had been taken with reference to an appeal or review of action by the War Labor Board on a

previous day was thereupon rescinded. Efforts were made to try to have an appeal provision refer only to those cases in which plant seizure actually had occurred. Those efforts were defeated." 89 Cong.Rec. 5812.

[26] 89 Cong.Rec. 5754-5.

[27] 89 Cong.Rec. 5791.

[28] 41 Stat. 456.

[29] § 304.

[30] § 307(a).

[31] § 307(d).

ments pronounced by the Labor Board, except through the effect of adverse public opinion."[32] The Court had already held, in the first Pennsylvania case, that a railroad company could not call upon the courts to review a decision of the Railroad Labor Board and enjoin its enforcement.[33]

Since that case is directly in point, it may be redundant to cite others. But an even stronger case is United States v. Los Angeles & Salt Lake Railroad Co.[34] The order in question there, unlike the orders in question in the Pennsylvania cases and in the present case, was practically certain to become the basis of a further order which would be enforceable. Yet the Court declined to review the questioned order. The Los Angeles Railroad had sued to enjoin and annul a final report or "order" of the Interstate Commerce Commission which determined the value of its property. The Railroad asserted that the order exceeded the powers of the Commission, violated the Valuation Act, and the Fifth Amendment, and was therefore invalid; also that irreparable injury was threatened. The Supreme Court said: "The so-called order here complained of is one which does not command the carrier to do, or to refrain from doing, any thing; which does not grant or withhold any authority, privilege or license; which does not extend or abridge any power or facility; which does not subject the carrier to any liability, civil or criminal; which does not change the carrier's existing or future status or condition; which does not determine any

right or obligation. * * * The final report may, of course, become a basis for action by the Commission, as it may become a basis for action by Congress or by the Legislature or an administrative board of a State. * * * But Congress did not confer upon the courts power * * * to annul the report, because of errors committed in making it. * * * And it is at least possible that no proceeding will ever be instituted * * * in which the matters now complained of will be * * * of legal significance."[35]

■ Executive Order 9370, issued August 16, 1943, which authorizes the Director of Economic Stabilization, when the War Labor Board reports to him that its orders have not been complied with, to direct withdrawal of priorities and government contracts "in order to effectuate compliance,"[36] is irrelevant here. The Board has not reported or threatened to report appellants' failure to comply with its order. Moreover the Director has stated in a letter to the Board, correctly we think, that Order 9370 applies only to Board orders issued under the War Labor Disputes Act.[37] The only function of the Price Administrator in connection with the Board's present order was to consider whether the authorized wage increases would be likely to require increases in freight rates, and the only function of the Director of Economic Stabilization was to pass upon the proposed wage increases in the light of probable rate increases. The Price Administrator reported to the Direc-

[32] Pennsylvania Railroad System and Allied Lines Federation No. 90 v. Pennsylvania Railroad Company, 267 U.S. 203, 215, 216, 45 S.Ct. 307, 311, 69 L. Ed. 574. "The jurisdiction of the Board to direct the parties to do what it deems they should do is not to be limited by their constitutional or legal right to refuse to do it. Under the act there is no constraint upon them to do what the Board decides they should do except the moral constraint, already mentioned, of publication of its decision." Pennsylvania Railroad Company v. United States Railroad Labor Board, 261 U.S. 72, 84, 43 S.Ct. 278, 283, 67 L.Ed. 536.

[33] Pennsylvania Railroad Co. v. United States Railroad Labor Board, 261 U.S. 72, 43 S.Ct. 278, 67 L.Ed. 536.

[34] 273 U.S. 299, 47 S.Ct. 413, 71 L.Ed. 651.

[35] 273 U.S. 299, 309-311, 47 S.Ct. 413, 414, 71 L.Ed. 651.

In Rochester Telephone Corporation v. United States, 307 U.S. 125, 130, 59 S.Ct. 754, 757, 83 L.Ed. 1147, the Court said that the kind of order sought to be reviewed in the Los Angeles case "does not of itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative action. In view of traditional conceptions of federal judicial power, resort to the courts in these situations is either premature or wholly beyond their province."

Cf. Columbia Broadcasting System, Inc. v. United States, 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563, supra note 4.

[36] 8 Fed.Reg. 11463.

[37] We do not imply an opinion that, by virtue of Executive Order 9370, Board orders issued under the War Labor Disputes Act are reviewable despite the contrary intention of Congress and despite the doctrine of the Los Angeles case.

tor that a rate increase would probably be required, and the Director approved the "proposed adjustments." It does not appear that either of these officers has threatened or is authorized to take any steps which would tend to require appellants to comply with the Board's order or to penalize them for noncompliance.

■ Appellants say in effect, though in other terms, that if they do not comply with the order the Board may notify the President of their noncompliance and the President may take possession of their plants and facilities. We have no occasion to decide whether in our opinion this is true. In some instances concerns which had failed to comply with Board orders have ultimately been taken over by Presidential orders. In other instances concerns which had not been the subject of any Board order have been taken over by Presidential orders.[38] If it be true, as appellants suggest, that the President may ultimately take possession of their plants and facilities, that possibility is irrelevant not only because it is speculative but also because it is independent of the Board's order. Neither the broad constitutional power nor the broad statutory [39] power of the President to take and use property in furtherance of the war effort depends upon any action of the War Labor Board. Any action of the Board would be informatory and "at most, advisory." Appellants' demand that we annul and enjoin the Board's order therefore amounts to a demand that we prevent the Board from giving the President advice which appellants contend would be erroneous. A court might as well be asked to prevent the Secretary of State or the Attorney General from giving alleged erroneous advice. The correctness of administrative advice cannot be reviewed by the courts.[40] They have neither the necessary authority nor the necessary qualifications for such work.

Affirmed.

---

[38] Executive Order 9341, 8 Fed.Reg. 6323, recites that "the operations of the American Railroad Company of Porto Rico have been interrupted by a labor dispute" and are "essential to the effective prosecution of the war"; directs the Director of the Office of Defense Transportation to take immediate possession; and directs the War Labor Board to "proceed, forthwith, after due investigation and hearing, to make a final determination of the existing labor dispute * * *". The facilities of the Los Angeles Shipbuilding & Drydock Corporation were taken over "* * * because of the failure * * * to perform satisfactorily the work called for * * *." Executive Order 9400, 8 Fed.Reg. 16641. Other plants were taken over to secure their effective operation. E. g., Executive Order 9141, 7 Fed.Reg. 2961 (Brewster Aeronautical Corp.); Executive Order 9399, 8 Fed.Reg. 16269 (Hemington-Rand, Inc., of Southport, N. Y.); Executive Order 9416, 9 Fed.Reg. 936 (York Safe & Lock Co.).

[39] Cf. War Labor Disputes Act, § 3, 57 Stat. 163, 164, 50 U.S.C.A. Appendix, § 1503.

[40] Standard Computing Scale Co., Ltd. v. Farrell, 249 U.S. 571, 574, 39 S.Ct. 380, 63 L.Ed. 780.