[L. A. No. 19113. In Bank. Jan. 31, 1946.]

PEARSON CANDY COMPANY, LTD. (a Corporation), Appellant, v. E. R. WAITS et al., Respondents.

Russell E. Parsons for Appellant.

David Sokol for Respondents.

TRAYNOR, J.—Plaintiff is a candy manufacturer engaged in interstate commerce. On October 27, 1941, plaintiff and defendant union signed a closed shop agreement to remain in force until April 30, 1942, and from year to year thereafter unless terminated by either party upon written notice at least thirty days before April 30th of any year. None of plaintiff's employees was a member of the union before the execution of the agreement, but all of them joined thereafter. Neither of the parties ever gave the notice required by the agreement for its termination.

In October, 1942, plaintiff rejected the union's demand that it discharge nine employees who had lost good standing in the union, and in January, 1943, defendant union initiated proceedings in the National War Labor Board to determine whether the agreement governed the conditions of employment in plaintiff's business. On May 25, 1943, the Tenth Regional Board of the National War Labor Board, after a hearing, issued a directive order "that the parties to this case comply with the terms of the contract of October 27, 1941, until such time as it shall have been terminated in accordance with its provisions, or by agreement of the parties, or until the contract shall have been held invalid by the final decision of a competent tribunal. This Board, while not expressly decid-

ing that it is without jurisdiction to determine the legality of the contract, concludes, for reasons of policy, that the determination of legality should be made by the National Labor Relations Board or other tribunal of competent authority, the issues in dispute being meanwhile resolved through the Board's direction that the contract shall be observed." Plaintiff's petition to the National War Labor Board for review of this order was denied on July 16, 1943.

On August 25, 1943, plaintiff brought this action for declaratory relief, asking that the closed shop agreement be declared invalid as in violation of the National Labor Relations Act. On September 8, 1943, before the case was tried, the National War Labor Board assumed jurisdiction over the dispute under section 7 of the War Labor Disputes Act of June 25, 1943 (50 U.S.C.A. App. § 1501 et seq.) "being of the opinion that the said labor dispute has become so serious that it may lead to a substantial interference with the war effort." The proceedings resulted in a directive order reading in part: "the National War Labor Board hereby decides the dispute and orders that the terms and conditions of employment to govern the relations between the parties shall be those set forth in their collective bargaining agreement dated October 27, 1941." While these proceedings were pending, the trial court dismissed plaintiff's action for lack of jurisdiction over the controversy. Plaintiff appeals.

The question is presented at the outset whether a state court has jurisdiction to determine the validity of the closed shop contract after the National War Labor Board has issued a directive order that the employment in plaintiff's business shall be governed by that contract.

The National War Labor Board was created by the President's Executive Order No. 9017 (50 U.S.C.A. App. p. 582) following an agreement by representatives of labor and industry that there would be no strikes or lockouts during the war. The executive order provides: "Whereas, as a result of a conference of representatives of labor and industry, which met at the call of the President on December 17, 1941, it has been agreed that for the duration of the war there shall be no strikes or lock-outs, and that all labor disputes shall be settled by peaceful means, and that a National War Labor Board be established for the peaceful adjustment of such disputes. . . . If not promptly settled by conciliation the Secretary of Labor shall certify the dispute to the Board,

provided, however, that the Board in its discretion after consultation with the Secretary of Labor may take jurisdiction of the dispute on its own motion. After it takes jurisdiction, the Board shall finally determine the dispute and for this purpose may use mediation, voluntary arbitration, or arbitration under rules established by the board.'' The nature of the orders of the board under the President's Executive Order was defined in a letter of Chairman Davis of the board to a member of the Conference Committee of the House of Representatives and the Senate when section 7 of the War Labor Disputes Act of June 25, 1943,* which has taken the place of the President's executive order, was under consideration. In this letter Chairman Davis stated that the record of compliance with the board's orders ''indicates that no legal change in the status of the Board's orders is necessary. These orders are in reality mere declarations of the equities of each industrial dispute, as determined by a tripartite body in which industry, labor, and the public share equal responsibility, and the appeal of the board is to the moral obligation of employers and workers to abide by the no-strike, no-lockout agreement and in conformance therewith to carry out the directives of the tribunal created under that agreement.'' It was therefore recommended in the letter that the board's orders ''should remain without specific legal sanctions.'' (89 Cong.Rec. 5794-5795.) This letter led to the abandonment of proposed amendments that would have changed the nature of the board's orders. (See the review of the consideration of the bill by Congress in *Employers' Group etc. Carriers* v. *National War Labor Board*, 143 F.2d 145, 148.) In the light of this history of the War Labor Disputes Act of June 25, 1943, the following statement in *Baltimore Transit Co.* v. *Flynn*, 50 F.Supp. 382, 387, with respect to the status of the board under the President's Executive Order is therefore still pertinent: ''[The National War Labor Board] does not exist as a tribunal to determine the legal rights and obligations of employer and employee, or to protect and enforce such rights, but merely to decide how such rights, in the Board's opinion, are to be exercised in the public interest in view of the state of war. . . . The function of the Board is to give expression

---

*This section provides that the board shall ''decide the dispute, and provide by order the wages and hours and all other terms and conditions (customarily included in collective-bargaining agreements) governing the relations between the parties, which shall be in effect until further order of the Board.'' (50 U.S.C.A.App. § 1507.)

of its views of the moral obligation of each side to the controversy, as members of society, to agree upon a basis for cooperation in the public interest. The jurisdiction and power of the Board to direct parties to do what it deems they should do in such interest is not limited by their constitutional or legal right to refuse to do it.'' ■ Thus, the board's orders, whether rendered before or after the War Labor Disputes Act, rest simply on an appeal to the moral obligation of the parties and are neither enforceable nor reviewable. (*Employers Group etc. Carriers* v. *National War Labor Board,* 143 F.2d 145, 148; *National War Labor Board* v. *Montgomery Ward & Co.,* 144 F.2d 528, 530; *National War Labor Board* v. *United States Gypsum Co.,* 145 F.2d 97; see *National Labor Relations Board* v. *Walt Disney Productions,* 146 F.2d 44, 48.) It is clear, therefore, that if a justiciable controversy arises under a contract made in the process of collective bargaining, the parties were not precluded from seeking relief in a court of competent jurisdiction on the ground that the National War Labor Board has assumed jurisdiction of the controversy: ''The National War Labor Board is not, under the law, vested with judicial functions, nor does it have power to enforce its determinations, called 'directives', upon the parties to a controversy before it. It is not a substitute for the courts, and the pendency of a controversy before it is not a bar to a suit in the courts. This limitation upon its powers is recognized by it, for in its statement of its public policy respecting awards, dated September 10, 1943, it said: 'The Board's determination of the matter will constitute a final adjudication unless and until a tribunal of competent jurisdiction issues rulings contrary to those of the Board. The action of the Board in no way prejudices the right of a party to appeal to a Court of competent jurisdiction for a judicial declaration of the rights and obligations flowing from the award. The Board's order will be made expressly subject to discontinuance should a Court render a decision contrary to the conclusions of the Board.' '' (*Oil Workers Inter. Union* v. *Texoma Nat. Gas Co.,* 146 F.2d 62, 65.) It is unnecessary to determine whether the state cases (*Frank Foundries Corp.* v. *Creager,* 323 Ill.App. 594 [56 N.E.2d 649]; *International Assn. of Machinists* v. *State,* 153 Fla. 672 [15 So.2d 485]; *International Brotherhood of Papermakers* v. *Wisconsin Employment Relations Board,* 245 Wis. 541 [15 N.W.2d 806]) on which defendants rely are distinguishable, for the defini-

tion by the federal courts of the board's jurisdiction and the effect of its decisions are controlling in any event.

 Plaintiff contends that the closed shop contract should be declared invalid on the grounds that it was coerced into signing the contract and that under section 8(3) of the National Labor Relations Act it was an unfair labor practice for plaintiff to enter into a closed shop agreement with a labor organization that did not represent a majority of its employees.

The evidence shows without conflict that plaintiff accepted the benefits of the contract and that it failed to exercise its right to terminate the contract before the renewal dates. Thus any right that plaintiff might have had to rescind the contract was waived by its failure to give prompt notice of its election to rescind, by its adherence to the contract for several years, and by its failure to avail itself of its right to terminate it. (Civ. Code, § 1691; *Neet* v. *Holmes,* 25 Cal.2d 447, 458 [154 P.2d 854]; *Toomey* v. *Toomey,* 13 Cal.2d 317, 320 [89 P.2d 634]; *Sanders* v. *Magill,* 9 Cal.2d 145, 155 [70 P.2d 159]; *Evans* v. *Duke,* 140 Cal. 22, 26 [73 P. 732]; *Clanton* v. *Clanton,* 52 Cal.App.2d 550, 555 [126 P.2d 639].)

Since the relief sought by plaintiff must be denied in any event, it is not necessary to consider whether the exclusive jurisdiction of the board to prevent any person from engaging in an unfair labor practice (National Labor Relations Act § 10(a), 29 U.S.C.A. § 160(a)) precludes state courts from declaring contracts invalid on the ground that they involve unfair labor practices under the National Labor Relations Act. (See *Franks Bros. Co.* v. *National Labor R. Board,* 321 U.S. 702, 704 [64 S.Ct. 817, 88 L.Ed. 1020]; *International Assn. of Machinists* v. *National Labor R. Board,* 311 U.S. 72, 82 [61 S.Ct. 83, 85 L.Ed. 50]; *National Labor Relations Board* v. *Walt Disney Productions,* 146 F.2d 44, 48.)

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.