Cohn, J.
Metropolitan Life Insurance Company (hereinafter called “ Metropolitan ”) instituted this action against United Office and Professional Workers of America and Industrial Life Insurance Company Agents Union, Local 30 (hereinafter called “ Unions ”), Philip Paris and others for a judgment declaring that the New York State Insurance Law bars Metropolitan from making payments ordered by the National War Labor Board to some eight thousand of its insurance agents. The payments constitute additional compensation of $2.85 per week to be paid to each agent for the period within which there had been pending before the National War Labor Board a controversy as to the amount of compensation to be awarded to these *396 employees. From the judgment declaring that the New York Insurance Law does not bar Metropolitan from making the payments this appeal is taken.
The action is auxiliary to a suit now pending in the United States District Court for the Southern District of New York entitled “ Paris v. Metropolitan Life Insurance Co.”. The District Court held that the provisions of the Insurance Law of the State of New York (§ 213, subd. 7; § 213-a, subd. 5) do not prohibit payment by plaintiff of the additional compensation of $2.85 per week as directed by the National War Labor Board. Upon appeal the United States Court of Appeals for the Second Circuit reversed the judgment, refused to pass upon the merits of the controversy, remanded the case to the District Court with instructions to retain jurisdiction, and decided that prior to any adjudication by the Federal courts upon the Federal questions involved, the State courts should first determine the issue as to whether the provisions of the State statute precluded plaintiff from making the aforesaid payments. (Paris v. Metropolitan Life Ins. Co., 167 F. 2d 834, certiorari denied 335 U. S. 827.) Hence, this action.
Metropolitan is a domestic mutual life insurance company wholly owned by its policyholders. Disputes between defendant Unions, the bargaining representatives of the insurance agents and plaintiff Metropolitan, over the compensation to be paid to agents employed by Metropolitan were on October 24, 1942, certified by the Secretary of Labor to the National War Labor Board as matters affecting the war effort of the United States. This step was taken after numerous attempts at conciliation had failed. The War Labor Board had been created by the President under his war powers and was continued by the Congress under the War Labor Disputes Act. (War Labor Disputes Act, U. S. Code, tit. 50, Appendix, § 1501, et seq.)
In accordance with labor’s “ no-strike pledge ” for the war’s duration, of which pledge judicial notice may properly be taken (Martin v. Campanaro, 156 F. 2d 127), the insurance agents of Metropolitan continued to work rather than strike. After a lapse of almost two years and on September 18, 1944, the board issued an order for the payment of future increases to the insurance agents of $2.85 per week and ordered that this sum should also be paid from the time of the certification of the dispute, namely October 24,1942, to the date of its final order, September 18, 1944.
When the disputes were first certified to the National War Labor Board, Metropolitan challenged the right of that tribunal *397 to entertain jurisdiction of the controversies. However, before the order was handed down by the Board, Metropolitan by stipulation dated July 19, 1944, agreed not to “ question the power of the Board to make the order, nor that it is a final order of the Board, nor will it question the determination of the amount of the compensation involved, but it will question only its ability to make retroactive payment, in view of the provisions of Sections 213 and 213-a of the New York State Insurance Law.”
The pertinent portion of subdivision 7 of section 213 of the Insurance Law provides as follows: “No such company * * * shall pay or allow to any agent * * * for procuring an application of or a life insurance policy, for collecting any premium thereon or for any other service performed in connection therewith any compensation greater than that which has been determined by agreement made in advance of the payment of the premium * * *.” Section 213-a refers to industrial life insurance and contains substantially identical language with respect to the payment for services in procuring an application for insurance, of compensation ‘£ greater than that which has been determined by agreement made in advance of the rendering of such service.” (Subd. 5.)
Plaintiff contends that foregoing statutory provisions were intended to, and do in explicit terms, forbid retroactive increases in this as in all other cases; that there is no express exception for collective bargaining and none can be inferentially supplied in view of the original purpose and subsequent history of the act.
Ill the construction of statutes, the paramount consideration of the courts is to ascertain and give effect to the intention of the Legislature (Vail v. Railroad Co., 147 N. Y. 377, 381; Matter of Meyer, 209 N. Y. 386, 390). The spirit and purpose of the law and the objects to be accomplished must be considered. The legislative intent is the great and controlling principle. (People v. Ryan, 274 N. Y. 149, 152.) Applying this well recognized rule we proceed to a consideration of subdivision 7 of section 213 and subdivision 5 of section 213-a (former section 97 of chapter 33 of the Laws of 1909) of the Insurance Law. These provisions were originally enacted in 1906 as part of a comprehensive legislative code regulating’ insurance companies in this State as the result of an exhaustive investigation of a joint committee of the Legislature known as the Armstrong Committee, designated for the purpose. Among other evils, the investigation disclosed discriminatory payments *398 to insurance agents who were related to officers and directors of the companies, as well as payments of unreasonable bonuses to certain agents dependen! upon the volume of business obtained by them. In many cases the expenses incurred by insurance companies in competitive endeavor to secure business were so great as to exceed the total loadings upon the premiums paid by policyholders. The committee concluded that “ Some limitation of the expense in getting business is imperatively required; otherwise there is little reason to doubt that there will be a continuance of the present extravagant methods.” (Armstrong, Joint Legis. Comm. Report to Investigate Affairs of Life Ins. Companies [1905], vol. VII, [Lyon ed.], p. 305.) It accordingly Suggested that commissions to insurance agents be uniform and fixed in advance. At the same time it vigorously condemned bonuses, prizes and rewards and other special inducements based upon the size of particular policies or upon the aggregate amount of insurance written. There can be little doubt that the evils sought to be remedied by the New York Legislature in enacting these subdivisions of sections 213 and 213-a were to be found in these retroactive and gratuitous payments by insurance companies at their own instance of extra compensation to agents on the basis of favoritism or as a reward for “ special merit ”. It was this class of payments that the provisions in question were designed to prohibit.
It was never the lawmakers’ purpose to limit payments made by insurance companies where, as here, the payments related only to the period during which the right to an increase in wages was being considered in collective bargaining negotiations. In the very nature of things it cannot be said that there was favoritism, discrimination or extravagance in ordering the payments that are here challenged by plaintiff. The decision of the trial court, we are persuaded, in no way defeats the purpose of the statute.
Moreover, though it were to be assumed that subdivision 7 of section 213 and subdivision 5 of section 213-a of the Insurance Law were intended by the lawmakers to apply to payments such as these, the payments here under the language of the statutes are not prohibited because the compensation is not greater than that provided in an existing agreement. The law prohibits only compensation in excess of that which has been determined by agreement made in advance of the payment of the premium ’ ’ in the one case (§ 213, subd. 7) and in the other (§ 213-a, subd. 5), compensation “ greater than that which has been *399 determined by agreement made in advance of the rendering of such service ”. The statute thus forbids only compensation in excess of that provided for by a pre-existing valid agreement for a lesser amount. Here there was no express agreement in advance on the date that the disputes were certified to the War Labor Board which limited the amount of additional compensation that might result from the collective bargaining negotiations during the period that such negotiations were in progress. At the time of the certification the compensation to be paid to these agents was seriously contested. Unions, as bargaining agents for these employees, were asking for an increase in pay. The men were unwilling to work at the old rate. Organized labor had agreed not to strike while the country was at war. For this reason these employees could not then strike. However, in the expectation that if they were granted an increase the same would be made retroactive to the time of the certification of the dispute to the War Labor Board, they had lived up to their “ no-strike pledge ”.
The pre-existing individual agreements between some of the insurance agents and Metropolitan fixing the amount of compensation of these men when, on October 24, 1942, the processes of the National War Labor Board were invoked created no barrier to an increase in compensation during the period in question as the result of collective bargaining. Under the labor laws of the nation as well as those of the State, Metropolitan was required to negotiate upon notification by the selected bargaining agents that a new collective agreement was demanded. (National Labor Rel. Bd. v. Jones & Laughlin Steel Co., Inc., 301 U. S. 1; Matter of N. Y. State Labor Bd. v. Loehmann Corp., 269 App. Div. 566.) In J. I. Case Co. v. National Labor Rel. Bd. (321 U. S. 332, 339) the Supreme Court held that an employer having contracts of employment with some employees covering wages, hours and working conditions, which contracts were valid when made and were unexpired, did not preclude exercise by the employees of their right under the National Labor Relations Act to choose a representative for collective bargaining nor warrant refusal by the employer to bargain with such representative in respect of the very terms covered by the individual contracts had with some of the employees.
Unions here were free to negotiate with Metropolitan concerning the amount of compensation for the insurance agents without being bound by their unexpired individual agreements if the collective bargaining negotiations materialized *400 in a labor contract. This is just what did occur. Notwithstanding the existence of some unexpired individual employment contracts, there was no agreement in force between Metropolitan and these employees which limited in advance the amount which could later be agreed upon between Metropolitan and Unions as a result of collective bargaining for the period after the collective bargaining negotiations had commenced. The circumstance that payment to the agents continued to be made and accepted at the old rates does not indicate an agreement to work at the old rates during the intervening period, but only that it was continued as a working arrangement pending the termination of the wage negotiations (Christie v. Port of Olympia, 27 Wn. [2d] 534; Martin v. Campanaro, 156 F. 2d 127, certiorari denied 329 U. S. 759, supra; Evadan Realty Corp. v. Patterson, 192 Misc. 850, 855). These negotiations ended in a stipulation by Metropolitan to pay the increased compensation for the period in question unless the Insurance Law would prevent it.
We are of the view that the statute does not prohibit an agreement under which the compensation is later to be fixed where there is a dispute as to what is fair compensation and where, as here, agents could not go out on strike in deference to labor’s “ no-strike pledge ” for the war’s duration. There was in this case no direction to pay ‘ ‘ any compensation greater than that which has been determined by agreement made in advance of the payment of the premium ” or “ greater than that which has been determined by agreement in advance of the rendering of such service.”
We quite agree with the finding of the trial court as stated in its well-considered opinion that “ there is nothing in the record of this litigation from which any reasonable person would conclude that these agents agreed to work at the old rates during the lengthy interval between notification by the collective bargaining agent and the ultimate determination of the dispute by the War Labor Board.” (195 Misc. 1040, 1051.)
Nor do we think that the determination directing payment to the insurance agents of the compensation ordered by the War Labor Board for the period during which the matter was sub judice, in any manner interferes with the normal regulation of the insurance business by the State of New York. It has not been decided that the War Labor Board was authorized to supersede and set aside the mandates of the Insurance Law of the State of New York. However great may have been the moral effect of the War Labor Board’s decisions, *401 we do not say that they would have been controlling here. It would seem that in this case they were merely directive and advisory in nature. (Employers Group v. National War Labor Bd., 143 F. 2d 145, certiorari denied 323 U. S. 735.) This case must be decided according to whether subdivision 7 of section 213 and subdivision 5 of section 213-a of the Insurance Law would have governed the situation presented if the collective bargaining negotiations between Metropolitan and Unions had terminated in the same agreements but without the intervention of the War Labor Board. Regulation of insurance is a State function which the Congress of the United States has not acted to transfer to the Federal Grovernment, regardless of whether it would have constitutional power to do so under the commerce clause (cf. United States v. South-Eastern Underwriters Assn., 322 U. S. 533). However, we hold that the determination of the War Labor Board has binding force for the reason that Metropolitan and the Unions voluntarily entered into a labor contract with supplementary stipulation which embodied the Labor Board’s recommendations and we rule that the New York State Insurance Law does not preclude the officers of Metropolitan from making the retroactive payments which the War Labor Board has ordered.
The judgment appealed from should accordingly be affirmed, with costs.