Dore, J.
(dissenting). In my opinion both sections of the statute before us for construction, by clear and unambiguous language and without any qualification or exception express or implied, forbid any life insurance company in the State of New York from paying to agents compensation greater than that determined by an “ agreement made in advance of the payment ” (of the premium under [§ 213, subd. 7], and of the services under [§ 213-a, subd. 5]). That is what the statutes plainly say and that is what they mean. The acts in question are found (art. IX-A. “ Life, Accident and Health Insurance Companies and Retirement Systems ”) in a statutory context that places numerous express statutory limitations on the liabilities insurance companies in New York are permitted by law to incur. In the same article, section 209 prohibits discrimination and certain inducements; section 210 prohibits discrimination as to brokers; section 212 sets certain limitations on new business; section 214 places limitations on salaries and pensions to officers and employees. The heading, common to both of the relevant sections, is “ limitations of expenses ”, All of the subdivisions of both sections, in the aggregate twenty-six, place *402 on expenses that an insurance company in New York may legally incur, mandatory statutory limitations made with almost meticulous particularity of detail on numerous items specifically set forth in each subdivision.
The particular subdivisions here before us relate to limitations on what life insurance companies are permitted to pay to agents. By their terms any such compensation “ greater than that which has been determined by agreement made in advance ’ ’ is expressly prohibited. Where there is no ambiguity, courts may not resort to interpretation to legislate by adding an exception (Settle v. Van Evrea, 49 N. Y. 280; Matter of Western Union Tel. Co. [Amer. Communications Assn.], 299 N. Y. 177, 184; McKinney’s Cons. Laws of N. Y., Book 1, Statutes [1942 ed.], §§ 73, 94; Corona Coal Co. v. United States, 263 U. S. 537, 540).
Only by prior fixation of the compensation in advance could be achieved the specific limitation on the particular type of expense herein involved. If prior fixation were not mandatory, the statute would be defeated, since any company and its agents could evade the law simply by failing to make any agreement whatever in advance. Accordingly, I think the proper interpretation of both subdivisions is an express statutory requirement that the compensation agreements be made in advance of the services or payment of the premium. That forbids retroactive payments including those herein in issue, with criminal penalties the State may impose under section 5 of the Insurance Law (L. 1939, ch. 882). The wisdom of the Legislature in prohibiting such retroactive compensation to agents can be realized when one considers that in this suit alone the retroactive pay involved aggregates about $800,000.
The increases here involved and allowed, clearly were not agreed upon “ in advance of the payment of the premium ” or ‘‘ in advance of the rendering of such service. ’ ’ But there must have been express agreements made in advance and in existence on the dates the disputes were submitted to the War Labor Board. The payments allowed by the board, pursuant to the stipulation, consist of additional compensation of $2.85 a week to be paid to each agent. As it is additional compensation, there must have been a mathematically ascertainable amount previously fixed by agreement in advance to which the additional compensation could be added with mathematical certainty. Accordingly, there is in the order appealed from, so far as the retroactive pay is concerned, a direction, contrary to the terms of the statute, to pay compensation greater than that determined by agreement made in advance.
*403 It is urged that the precise evils sought to he remedied when the acts in question were originally enacted were prohibition of voluntary gratuitous payments by insurance companies to favored agents in the form of bonuses, prizes, etc. If that were the purpose of the subdivisions it would have been easy for the Legislature to have said so. It did not. On the contrary, it made a mandatory prohibition against any payment to agents except by agreement made “ in advance of the payment ”. That subdivision 7 of section 213 was not aimed at the practice of giving bonuses is demonstrable, because subdivision 8 of section 213, immediately following subdivision 7, explicitly covers that very subject and by its terms expressly outlaws “ any bonus, prize or reward or any increased or additional commissions or compensation of any kind whatsoever ”. Similar prohibition against such bonus to agents is contained in subdivision 6 of section 213-a, immediately following subdivision 5 that is before us. Accordingly, as the danger of paying voluntary excessive bonuses and prizes is expressly covered by contiguous subdivisions of the statute, it may not be said in any reasonable construction that such prohibition was also duplicated but without express reference to bonuses in the subdivisions we are asked to construe.
A most important aspect of this appeal is the State public policy as declared by the Legislature in the statutes under discussion to control and limit the expenses of life insurance companies for the protection of policyholders. We are here not passing merely on the special ad hoc claims or merits involved between the parties in this litigation but on fundamental principles of public policy relating to the State statutory control of insurance. This important aspect of the litigation was clearly recognized by the United States Court of Appeals when it stated that it deferred decision as otherwise “ our decision might embarrass the State authorities in exercising important functions in regulating insurance ”, and in its opinion that court also said: “ In the circumstances disclosed we are not disposed to discuss either the issue of the proper interpretation of the State Act or the merits of the somewhat delicate questions of possible conflict between United States and State laws which might be involved in the litigation ” (Paris v. Metropolitan Life Ins. Co., 167 F. 2d 834, 835).
This aspect of the case doubtless explains why the Superintendent of Insurance of the State of New York refused to sanction and indeed prohibited the questioned payments; and the *404 Superintendent’s administrative interpretation should be given great weight in construing the statute.
The learned Special Term said: “ this lawsuit is not so much a debate over the meaning of a particular statute as it is a question of labor-management relations ” (195 Misc. 1040, 1048). But the meaning of the statute is the sole issue we are asked to decide. If by the talisman of 61 labor-management relations ” the State statute is held not to mean what it says, then pro tanto at least the control of insurance is taken from the State Superintendent guided by State statutes and made subject to collective bargains and labor boards. Such result, with its important consequences to State control of insurance and policyholders, should not be reached unless clearly intended; and I think it should not be achieved by incorporating into the statute an implied exception contrary to its express terms and not incorporated by the Legislature.
All parties agree that any retroactive pay must be made within the so-called statutory “ ceiling ” regarding the aggregate of expenses an insurance company in New York may incur in any year. It happens that the retroactive pay herein allowed is within such “ ceiling ”. But if an implied exception is made to one section of the act, there is no basis in reason for not allowing similar exceptions to other sections; a more liberal retroactive allowance in another case may be above the so-called “ ceiling ”; and the statute by such erosion fails in its avowed purpose to limit insurance companies’ expenses.
It should also be noted that subdivision 7 of section 213, was re-enacted in 1939 without change (L. of 1939, ch. 882); and section 213-a was added in 1940 (L. 1940, ch. 574). Labor boards, State and Federal, were then in existence and functioning for the enforcement of collective bargaining agreements (Labor Law, art. 20, New York State Labor Relations Act, added by L. 1937, ch. 443; National Labor Relations Act, 49 U. S. Stat. 449; U. S. Code, tit. 29, § 151 et seq.); if, as to such agreements, the Legislature intended to make the exception herein made by Special Term, it could then easily have done so.
This appeal under the facts presented does not involve a conflict between Federal and State power. On October 24, 1942, the Secretary of Labor certified the dispute existing between the insurance company and its agents to the National War Labor Board. However, any action by the board would be at most advisory and not binding on the disputants in the absence of their consent to be bound (Employers Group v. National War Labor Bd., 143 F. 2d 145, certiorari denied 323 U. S. 735; *405 Martin v. Campanaro, 156 F. 2d 127, certiorari denied 329 U. S. 759). Nevertheless, the stipulation by the insurance company of July 19,1944, not to question the determination by the board of the amount of the compensation involved except with respect to the company’s ability to make retroactive payments in view of the provision of sections 213 and 213-a of the New York State Insurance Law, made the decision of the board binding except with respect to such retroactive payments. Under the pertinent sections of the Insurance Law heretofore construed, the insurance company was prohibited on July 19, 1944, from agreeing to retroactive payments.
In J. I. Case Co. v. National Labor Rel. Bd. (321 U. S. 332, supra), the court held that individual private employment contracts could not limit collective bargaining agreements with respect to the matters embraced in the individual contracts. In the case before us, we are dealing not with a private restriction but a statutory prohibition; such state of facts and law was not at all present in the case cited, and it is not here controlling.
Accordingly, 1 dissent and vote to reverse the declaratory judgment appealed from and to grant judgment as prayed for in the complaint.
G-lennon, J. P., Van Vooehis and Sheintag, JJ., concur with Cohn, J.; Does, J., dissents in opinion.
Judgment affirmed, with costs.